513 A.2d 1097

Harston Hall Nursing and Convalescent Home, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

476

Argued April 7, 1986, before Judges MacPhail and Palladino, and Senior Judge Barbieri, sitting as a panel of three.

*Martin J. Cerullo, Frumkin & Manta,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

Opinion by Judge Palladino, August 7, 1986:

Harston Hall Nursing and Convalescent Home, Inc. (Petitioner), a privately owned, skilled nursing and in-

termediate care facility, has appealed from an order of the Director, Office of Hearings and Appeals (Director) of the Pennsylvania Department of Public Welfare (DPW) denying Petitioner's exceptions to DPW audit findings disallowing certain Medical Assistance reimbursements. In particular, Petitioner objects to DPW's refusal to allow Medical Assistance reimbursement for ground rent and DPW's imputation of interest to an interest-free loan made by Petitioner to its President, which imputed interest was used to reduce reimbursement for capital interest.[1] For the reasons which follow, we affirm.

During 1976, Nelson R. Hartranft (Mr. Hartranft), President and sole stockholder of Petitioner, and his wife Thelma (Mrs. Hartranft) were in the process of obtaining a divorce. In order to provide future support for Mrs. Hartranft, the real estate upon which Petitioner's facility is situated, jointly owned by Mr. and Mrs. Hartranft, was placed in trust pursuant to a Trust Agreement, dated March 19, 1976, which required Petitioner to pay ground rent to the Trust. In turn, the Trust paid a monthly income to Mrs. Hartranft. Because DPW determined that this was a transaction among related parties, it disallowed the ground rent expense claimed by Petitioner for fiscal years 1979, 1980, and 1981.

---

[1] Petitioner challenged numerous DPW audit findings for fiscal years 1977 through 1981 in its underlying appeals to the Director. These contentions were consolidated and organized into six issues for an administrative hearing before a DPW Hearing Attorney. Following a December 9, 1983 hearing and the submission of briefs, the record was closed on March 26, 1984. Based upon a review of the record and the recommendations of the Hearing Attorney, the Director, on February 11, 1985, issued an order sustaining Petitioner's appeal on two issues and denying relief on the remaining four. Petitioner appeals only two of those issues to this Court.

In its 1977, 1979, 1980 and 1981 audits, DPW found record of an interest-free loan in Petitioner's balance sheets. This loan was made in 1968 or 1969 to Mr. Hartranft. The amount due on January 1, 1977 was $108,807.00 and as of December 31, 1982 was $76,630.00. DPW imputed interest on this loan and then offset the imputed interest against Petitioner's expense claim for interest on capital indebtedness. This action reduced Petitioner's reimbursement for interest from the Medical Assistance Program. No documentation in Petitioner's accounting records exists, dating back to 1968, as to whether the loan was in cash or in kind.

Title XIX of the Federal Social Security Act, 42 U.S.C. §§1396-1396q, establishes the Medical Assistance Program (Program). By statute,[2] Pennsylvania participates in this jointly financed program which provides reimbursement for nursing care services to individuals qualifying for Medical Assistance. Under the auspices of DPW, Pennsylvania has developed a State Plan for Medical Assistance as required by federal law.[3] The Program provides cost-related reimbursement on behalf of eligible individuals whose institutional care for skilled nursing home or intermediate care in a licensed non-public facility is prescribed by a physician.[4] The guidelines and procedures for reimbursement are detailed in the Manual for Allowable Cost Reimbursement For Skilled Nursing And Intermediate Care Facilities (MACR).[5]

---

[2] Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, §443.1, *added* July 31, 1968, P.L. 904, *as amended*, 62 P.S. 443.1.

[3] 42 U.S.C. §1396a.

[4] *See* Chapter 1181. Nursing Facility Care, 55 Pa. Code §§1181.1-1181.454.

[5] The MACR originally appeared at 5 Pa. B. 2928-34 (1975) and has been codified in its current amended form at 55 Pa. Code §§1181.201-1181.274.

In order to be eligible for cost reimbursement, each nursing facility must file a "cost report" with DPW within ninety days of the close of each fiscal year. 55 Pa. Code §§1181.45(a)(3) and 1181.71. DPW then audits the cost report, 55 Pa. Code §1181.74 and, based upon the results, computes any adjustments to the reimbursement due the facility. The facility has the right to appeal any adjustment with which it is dissatisfied. *See* 55 Pa. Code §§1101.84 and 1181.101.

Our scope of review in a DPW decision is limited to determining whether the adjudication is supported by substantial evidence, is in accordance with the law and whether any constitutional rights were violated. *The Jewish Home of Eastern Pennsylvania v. Department of Public Welfare, Office of Hearings and Appeals*, 84 Pa. Commonwealth Ct. 637, 480 A.2d 1316 (1984).

## GROUND RENT

Petitioner appeals a DPW audit finding disallowing Petitioner's reimbursement claim for rent paid to a trust which holds title to the land upon which its facility is situated.

Our review of the trust agreement leads us to the inescapable conclusion that the trust was an elaborate mechanism to provide support for Mrs. Hartranft upon divorce without cost to Mr. Hartranft and without relinquishing control over the property for which Petitioner claims rental reimbursement.

The express purpose of the trust, as declared on its face page, is to provide support for Mrs. Hartranft subsequent to their divorce. This was accomplished by having Mr. and Mrs. Hartranft create a trust and deed the ground upon which Petitioner is situated to that trust. The terms of the trust provide that Petitioner must lease this ground from the trust. In turn, the trust pays a monthly stipend to Mrs. Hartranft, provides a

place for her to live and provides for all of her medical expenses. The trust contains an elaborate formula, linked to the rise and fall of the Consumer Price Index, to determine the monthly stipend.

Further, Mr. Hartranft is attempting, via the trust, to gain reimbursement for support payments to his wife without relinquishing control over this ground. Clause ten of the trust allows Petitioner to direct the trustees to sell or mortgage the ground in question and amend the lease to conform thereto. As sole owner of all of Petitioner's common stock, the actions of Mr. Hartranft are the actions of Petitioner.

The ground rent expenses claimed were $56,084 for 1980 and $13,000 each for 1979 and 1981. Petitioner does not assert that it rented the ground upon which it stands at any time prior to the Hartranft's divorce.

All costs must be necessary and reasonable to the proper care of Medical Assistance patients in order to be allowable. MACR III, 8 Pa.B. 2833. In an arms-length transaction, ground rent might well be considered a "necessary and reasonable" cost. However, the instant payments are merely a method to provide support for Mrs. Hartranft and to gain reimbursement for this cost of his divorce from DPW. Petitioner cannot seriously contend that these payments are the same as an arms-length transaction between an unrelated lessor and lessee. The Medical Assistance Program does not exist to fund creative divorce settlements. *Mead Nursing Home v. Department of Public Welfare,* 59 Pa. Commonwealth Ct. 539, 430 A.2d 379 (1981). (Cost of resolving dispute among owners is not related to patient care and is not allowable.) *See also Pennsylvania Pharmaceutical Association v. Department of Public Welfare,* 542 F. Supp 1349 (W.D. Pa. 1982). (Program to benefit recipients not providers.) Accordingly, DPW's disallowance of the ground rental expense is supported

by *substantial evidence in the record and is in accord-*
ance with the law.[6]

IMPUTATION OF INTEREST TO AN INTEREST-FREE LOAN

As its second ground for appeal, Petitioner contends
that its reimbursement for capital interest expense
should not be reduced by investment income derived
from imputing interest to an interest-free loan in the
absence of a specific regulation so requiring. Our
review of the record leads us to the conclusion that
DPW's action was proper.

In 1968 or 1969 Petitioner made an interest-free
loan to its president, Mr. Hartranft. Subsequently, Peti-
tioner obtained a mortgage to finance construction of a
new nursing care facility. Petitioner seeks full reim-
bursement for the interest on this mortgage.

Reimbursement of interest expense is governed by
MACR IV-D-10-a and MACR IV-D-10-e.[7] MACR IV-

---

[6] The Hearing Attorney found that DPW relied on MACR IV-
D-13 in disallowing Petitioner's claim for reimbursement which
provides:

13. *Costs of related organizations*

Ownership costs of renting facilities from organizations re-
lated to the facility by common ownership of more than
10% equity, contract, control, interlocking directorates or
officers will be recognized, at the cost to the related organ-
ization. Acutal depreciation, interest, taxes and related
*property costs will be allowable in lieu of the rent.* The
organization, corporation or firm must be registered under
appropriate State or Federal laws.

8 Pa.B. 2837. Because we believe that *Petitioner's attempt to obtain*
reimbursement for the cost of the divorce settlement is not a cost
necessary and reasonable to the proper care of Medical Assistance
patients, MACR III, 8 Pa.B. 2833, we need not reach this issue.

[7] 8 Pa.B. 2836-2837. IV-D-10-a, *as amended,* is codified at 55
Pa. Code §1181.260(a) and IV-D-10-e, *as amended,* is codified at 55
Pa. Code §1181.260(h).

D-10-a provides in pertinent part: "Necessary and proper interest on both current and capital indebtedness is an allowable cost. . . . " MACR IV-D-10-e provides in pertinent part that: "Interest expense, reduced by investment income, . . . will be recognized." From these regulations DPW concluded that imputation of interest to the interest-free loan was necessary under MACR IV-D-10-e.

DPW is the Commonwealth agency charged with carrying out the intent of the Medical Assistance Program. As such, its determination of what constitutes reimbursable expense is given controlling weight unless plainly erroneous or inconsistent with the regulation or underlying statute. *Department of Public Welfare v. Forbes Health Systems*, 492 Pa. 77, 81, 422 A.2d 480, 482 (1980). The interpretation of Section IV-D-10-e by DPW is consistent with the language of that regulation, and with the underlying statute, Section 443.1(3) of the Public Welfare Code.

Section 443.1(3) provides for reimbursement on a cost related basis. 62 P.S. §443.1(3). Necessary and proper interest on capital and current indebtedness is an allowable cost. MACR IV-D-10-a. However, the MACR does not define the term "necessary." In the absence of specific instructions or guidelines in the MACR, facilities will follow the guidelines and policies in the Medicare Provider Reimbursement Manual (HIM-15). MACR IV, 8 Pa. B. 2834. Necessary is defined in the federal regulations.

*Necessary* requires that the interest:

(i) Be incurred on a loan made to satisfy a financial need of the provider. Loans which result in excess funds or investments would not be considered necessary.

(ii) Be incurred on a loan made for a purpose reasonably related to patient care.

(iii) Be reduced by investment income except where such income is from gifts and grants, whether restricted or unrestricted, and which are held separate and not commingled with other funds. Income from funded depreciation or a provider's qualified pension fund is not used to reduce interest expense. Interest received as a result of judicial review by a Federal court (as described in §405-454(1)) is not used to reduce interest expense.

42 C.F.R. §405.419(b)(2).

Had Petitioner made an interest bearing loan to its president or otherwise invested this money, Petitioner could have reduced the dollar amount it needed to borrow for the mortgage. Therefore, not all of the capital interest expense claimed by Petitioner was necessary within the meaning of the definition. The portion of the mortgage equal to the interest imputed to the interest-free loan was not incurred "to satisfy a financial need of the provider" nor was it incurred for a "purpose reasonably related to patient care." Petitioner does not challenge the method used to determine the amount of interest which was imputed.

The corpus of the loan to Hartranft was capable of earning interest and the interest earned would be investment income to Petitioner. In the normal course, this investment income would be used to reduce the interest reimbursement on capital indebtedness. MACR IV-D-10-e. Granting an interest-free loan circumvents this process, the net effect of which is to encourage providers to borrow funds rather than employing existing working capital for building new facilities or other capital expenses. If this practice is allowed, the interest rate on the borrowed funds would be subsidized by the Medical Assistance reimbursement of interest expense. *See Portland Adventist Medical Center*

*v. Heckler,* 561 F. Supp. 1092 (1983). (Interest expense of constructing new wing disallowed by imputing interest to an interest-free loan of hospital provider to its subsidiary.) This would defeat the purpose of the Medical Assistance reimbursement program.

In its defense, Petitioner asserts that the loan was merely an "accounting manipulation" and that the amount of the loan, as stated on Petitioner's books, greatly exceeds the small amount of cash that Mr. Hartranft actually received. Therefore, Petitioner asserts that interest should be imputed only on the amount of cash actually received by Mr. Hartranft. This argument is without merit. Petitioner bears the burden of proof in challenging an action or finding of DPW's auditors. The record fails to reveal that the amount of the loan was other than as represented on Petitioner's books or that it was disbursed in kind. Under these circumstances, DPW could reasonably rely on Petitioner's books in finding that the loan existed and in determining its amount.

Finally, Petitioner asserts that even if the imputation of interest was found to be appropriate, that interest should be offset against all costs of Petitioner, not just those costs allowable for reimbursement purposes. We disagree. The MACR speaks directly to this point when it states: "Investment income on unrestricted funds will reduce interest expense." MACR IV-F-3-a, 8 Pa.B. 2837.

Because we conclude that the imputation of interest by DPW to an interest-free loan from Petitioner to its President is proper, this interest must be offset against reimbursable capital interest. MACR IV-D-10-e. Therefore, we affirm.

ORDER

AND NOW, August 7, 1986, the order of the Pennsylvania Department of Public Welfare, Director of Office

of Hearings and Appeals, at File Nos. 23-81-155, 23-81-156, 23-81-157, 23-82-3 and 23-83-54, dated February 11, 1985, is affirmed.

ORDER

AND NOW, September 12, 1986, the petition for award of bill of costs filed by the Commonwealth of Pennsylvania, Department of Public Welfare pursuant to Pa. R. A. P. 2741(2) is granted. Harston Hall Nursing and Convalescent Home, Inc. is directed to pay costs in the amount of $45.14 to the Department of Public Welfare.