528 A.2d 676

Episcopal Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 17, 1986 before Judges BARRY, and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Jennifer A. Stiller, Wolf, Block, Schorr and Solis-Cohen,* for petitioner.

*Diane J. Bartels,* Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 8, 1987:

Episcopal Hospital (Petitioner) appeals from an order of the Department of Public Welfare (DPW) denying Petitioner reimbursement for services provided to Helen Holland, a medical assistance (MA) recipient. We affirm.

The facts in this case are not in dispute.[1] Holland was admitted for a direct laryngoscopy with biopsy and esophagoscopy on May 7, 1985 and discharged on May 8, 1985. The procedures were medically necessary. Petitioner's claim for payment for these services was rejected by DPW's Bureau of Utilization Review (BUR).

---

[1] The cassettes used to record the hearing in this case were erased prior to being transcribed. The parties submitted a stipulation of facts.

BUR determined the nature of the services needed and the patient's condition did not require her to be admitted for an overnight stay. Petitioner appealed to DPW's Office of Hearings and Appeals (OHA), which sustained the appeal. DPW's Division of Inpatient Hospital Review requested reconsideration. The Executive Deputy Secretary of DPW vacated OHA's decision and issued a final order denying Petitioner reimbursement. Petitioner now appeals to this court.

Petitioner admits that the services could have been safely provided in a special procedure unit (SPU)[2] and that the overnight stay was not necessary for Holland. DPW has stipulated that the amount Petitioner would receive, if reimbursed, would be the same whether the services were provided in an SPU or during an overnight admission. DPW admits that if Holland had been treated in a SPU, Petitioner's request for payment would have been approved. Therefore, the only issue before us is whether DPW can legally deny a hospital reimbursement for medically necessary inpatient services under the MA program solely because the most appropriate place to provide them was in a SPU rather than during an overnight admission.

In order to understand how this conflict arose, it is helpful to examine the changes which have occurred in reimbursement under the MA program and, specifically, the changes in SPU reimbursement. In 1965 the United States Congress amended the Social Security Act to establish the Medicare and Medicaid reimbursement programs.[3] The mechanism by which health

---

[2] A SPU is a facility designed to deliver surgical and medical service to patients who require observation and assistance but who do not require overnight admission. *See Eye and Ear Hospital v. Department of Public Health,* 100 Pa. Commonwealth Ct. 363, 364 n. 1, 514 A.2d 976, 976 n. 1 (1986).

[3] 42 U.S.C. §§1395-1396p, added by Act of July 30, 1965, Pub. L. No. 89-97, 79 Stat. 291.

care facilities were to be reimbursed was a cost basis system. This system essentially allowed the facilities to recover whatever it cost them to provide services (operating and capital) to each MA recipient. Section 2173 of the Omnibus Budget Reconciliation Act of 1981 replaced the cost basis Medicaid reimbursement requirement with a requirement that the state Medicaid agencies provide payment by determining reasonable and adequate rates.[4] While this allowed the continuation of the cost basis program, it also gave the states flexibility to adopt alternatives, as long as they met the requirements of the federal regulations.[5]

DPW, the Pennsylvania state Medicaid agency,[6] on February 18, 1984, issued proposed regulations for the purpose of changing its cost basis MA inpatient reimbursement to a "prospective payment system" (PPS). 14 Pa. Bull. 580. Basically, a PPS reimburses hospitals a set amount for each patient admission, regardless of the length of time spent in the hospital and the services required by the patient. The amount is determined according to which "diagnostic related group" (DRG) the patient is placed. Under the DRG system patients are classified into groups which contain clinically similar diagnoses that are comparable with respect to the use of resources.[7] The final regulations initiating this change

---

[4] Pub. L. No. 97-35, 79 Stat. 808-09, amending 42 U.S.C. §1396(a).

[5] 42 CFR §§472.200-477.205.

[6] The Medical Assistance Program is the vehicle through which Pennsylvania implements the Medicaid system. DPW administers the program pursuant to Section 201 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §201.

[7] The DRG classification system was developed at Yale University. There are 467 groups. Each MA discharge is placed in a DRG depending upon the patient's principal diagnosis. Three additional groups have been added to cover problem situations. 14 Pa. Bull. 567.

were published June 23, 1984 and were effective July 1, 1984. 14 Pa. Bull. 2209.

Pennsylvania proposed substantial changes in its regulations relating to MA Inpatient Hospital Services on March 17, 1983. 13 Pa. Bull. 1010. Of importance to this case was the proposal to include the regulations covering SPU reimbursement with those on inpatient reimbursement. The changes were made "in the interest of cost containment," *Id.* at 1008, and were an interim step prior to the adoption of a PPS.[8] The final interim regulations were published September 24, 1983, 13 Pa. Bull. 2885, and provided that payment for SPU services was to be made at 100% of cost up to 200% of the current MA inpatient per diem rate. Former 55 Pa. Code §1163.58(c). Outpatient (OP) procedures performed in an SPU would be covered. Former 55 Pa. Code §1163.58(h). These final regulations included the following pertinent definitions:

> *Day of inpatient hospital care*—Room, board and professional services furnished to a patient on a continuous 24-hour-a-day basis in a semi-private room of a hospital. The term includes those items and services ordinarily furnished by the hospital for the care and treatment of inpatients provided in an institution other than one maintained primarily for treatment and care of patients with tuberculosis or mental disease. *Inpatient hospital services*—Services other than those provided by an institution for tuberculosis or mental diseases which are ordinarily furnished in a hospital for the care and treatment of

---

[8] A discussion of the attempts to contain Medicare and Medicaid costs with a PPS can be found in Hamilton, *Barriers to Hospital Diversification: The Regulatory Environment,* 24 Duq. L. Rev. 425, 432-434 (1986).

inpatients, furnished under the direction of a licensed physician, dentist, podiatrist, or nurse-midwife.

*Short procedures unit (SPU)*—A unit of a hospital that is organized for the scheduled delivery of medical, surgical or dental services to patients who do not require an overnight stay in the hospital but, because of the nature of the care being rendered or the procedure being performed, must remain in the facility for observation of recovery. The unit must consist of beds designated solely for the purpose of providing SPU services.

Former 55 Pa. Code §1163.2.

When DPW changed MA inpatient reimbursement to a PPS in 1984, the manner in which SPU services were to be treated was significantly modified. Under the new regulations, the definition of SPU was removed from the regulations and the following definition added: *"Hospital admission*—The formal acceptance of a patient to a hospital inpatient or short procedure unit for purposes of providing inpatient hospital services." 55 Pa. Code 1163.2. Procedures designated as OP would no longer be reimbursed if performed in a SPU unless the health or life of the patient was at risk. 55 Pa. Code §1163.59(a)(3).

The reason for treating inpatient and SPU admissions the same was described in the preamble accompanying the final regulations:

Under the Department's [DPW] DRG payment system, services performed in a short procedure unit of a hospital will be considered inpatient services and will be paid the full DRG rate if the admission is determined to be medically necessary. The Department has included this provision in order to allow hospitals to choose the

most appropriate setting in which to perform a service.

14 Pa. Bull. 2194. Because SPU admissions would be treated as hospital admissions, they would now be subject to utilization review requirements.[9] 55 Pa. Code §1163.72(a).

Petitioner contends that the regulations provide for the hospital to choose whether a MA recipient, requiring medically necessary inpatient services, will be admitted overnight or to a SPU and, therefore, there is no legal basis for DPW to refuse payment. DPW counters that its regulations and the federal regulations on which they are based require that the setting chosen, in which medically necessary inpatient services are provided, be the most appropriate setting. DPW interprets most appropriate setting to be the one in which the hospital can "render the minimum and least restrictive care necessary to assure the health and safety of the recipient."[10] If the setting chosen by the hospital does not meet this criteria, DPW will consider the admission medically unnecessary and disallow reimbursement.

Our scope of review is limited to a determination of whether the decision is supported by substantial evidence, is in accordance with the law and whether any constitutional rights were violated. *Harston Hall Nurs-*

---

[9] On October 18, 1986 DPW proposed to establish a Chapter 1126 in the Medical Assistance Manual entitled "Ambulatory Surgical Center and Hospital Short Procedure Unit Services." 16 Pa. Bull. 3955. This chapter proposes to eliminate DRG reimbursement for SPU services and to implement a new payment system for same day surgical services performed in either a SPU or an ambulatory surgical center (ASC). Proposed 55 Pa. Code 1126.1. The services appropriate to be performed in an ASC or a SPU will be designated by DPW, proposed 55 Pa. Code 1126.33(a), and DPW will establish "maximum reimbursement fees." Proposed 55 Pa. Code 1126.32(a).

[10] DPW's brief at 11.

*ing and Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986). DPW's interpretation of its own regulations must be upheld as long as the interpretation is consistent with the regulations and is not plainly erroneous. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

Petitioner first asserts that there is no legal authority for the denial of reimbursement on the basis of the impropriety of the setting in which medically necessary services were rendered.

Two regulations are cited by DPW to support its decision to deny reimbursement for the services provided to Holland. The first is found in the General Provisions Chapter of the Medical Assistance Manual and provides: "The Department pays for compensable services or items rendered, prescribed or ordered by a practitioner or provider if the service or item is: Not in an amount that *exceeds the recipient's needs,*" 55 Pa. Code §1101.66(a)(3) (emphasis added). The more specific regulation, found in the Inpatient Hospital Services Chapter, states that: "The Department does not pay for an admission that it determines is not medically necessary." 55 Pa. Code §1163.51(e). DPW explains that: (1) by admitting Holland on an inpatient basis, Petitioner provided services which exceeded her needs; and (2) since the services needed by Holland could have been safely provided in a SPU, the inpatient admission was not the most appropriate setting and, consequently, the admission for an overnight stay was not medically necessary.

Petitioner relies on the language of the preamble to the final regulations that SPU services will be "considered inpatient services" in order "to allow hospitals to choose the most appropriate setting in which to

perform a service" to support its interpretation that once it is determined that the *services* needed are medically necessary, the hospital can choose to provide them in a SPU or on an inpatient basis. However, Petitioner's argument places the emphasis on the hospitals being allowed to choose and ignores the requirement that the choice be of the "most appropriate setting."

Petitioner argues that since there is no difference in payment whether the services are provided in a SPU or on an inpatient basis, there is no distinction between the two settings that could make one more appropriate than the other as far as DPW is concerned. This argument does not withstand analysis.

Initially, we note that while the payment may be the same, admitting a patient on an inpatient basis who can be safely cared for in a SPU does have financial impact on the MA program. The actual rate at which the hospitals are reimbursed is based on cost data from prior fiscal years. 55 Pa. Code §§1163.123, 1163.124. If this procedure is used to compute rates in the future, the rates will reflect the higher cost associated with an inpatient admission.

Additionally, the federal regulations require that states participating in Medicaid assure that "payments be consistent with efficiency, economy, and quality of care." 42 C.F.R. §447.250(b). It is not an efficient use of resources to keep a patient overnight when the patient's condition does not require it. Unnecessary exposure to patients who do require inpatient treatment increases the risk of acquiring a nosocomial infection, which reflects on the quality of care.

We conclude that DPW's interpretation is consistent with the regulations. Reimbursement for an inpatient admission may be denied on the basis that the admission was medically unnecessary if the patient could have

been *safely* treated in a SPU. We note that there is nothing in the record which indicates the decision to admit Holland overnight was other than Petitioner's. If there were evidence that her physician believed it necessary for her to be kept overnight, our conclusion might very well differ.

Petitioner also alleges that DPW's decision was based on a letter from DPW's Deputy Secretary for Medical Assistance, Gerald F. Radke, in response to an inquiry from James M. Redmond, Senior Vice-President of the Hospital Association of Pennsylvania. The letter states:

> When a hospital admits a patient for an overnight stay to perform a procedure that normally takes only several hours for observation and performance in an SPU, we consider the admission to be inappropriate use of an inpatient hospital bed, unless the medical condition of the patient requires an overnight stay.

R.R. at 13a. Petitioner argues that this letter is contrary to the regulations in effect and, therefore, to have any effect must be promulgated as a regulation. In light of our conclusion that DPW's interpretation is consistent with the regulations, this argument has no merit.

Lastly, Petitioner contends that DPW's decision in this case is arbitrary and capricious because in two other appeals the Executive Deputy Secretary reversed BUR reimbursement denials based on inappropriate setting. However, these administrative proceedings are not binding and the Executive Deputy Secretary may change his interpretation if he determines it was inconsistent with state and federal regulations. We are limited in our review to determining whether the interpretation applied in this case is legally correct, which we have done.

Accordingly, we affirm.

### ORDER

AND NOW, July 8, 1987, the decision of the Department of Public Welfare in the above-captioned matter is affirmed.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

Here, there was no question that the medical procedure was necessary. The issue is whether the payment for services should be denied to the hospital because the Department of Public Welfare's committee determined that the procedure could have been safely provided in a special unit, not requiring an overnight stay, so that the admission is considered medically unnecessary and payment is disallowed.

The legislature empowered the Department to carry out the public policy of the Commonwealth, and the purposes of the Act, namely, to aid medically-assisted recipients.

Our task is to determine whether the Department's activities are within the authority delegated to it by the legislature. *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 233 A.2d 290 (1967).

We are not concerned with the wisdom of the rules and regulations, but rather that what has been ordered must appear to be so entirely at odds with the fundamental principles involved in the program.

To deprive a health provider *of any reimbursement whatsoever* where the medical procedure was agreed as necessary, on the theory that such admission overnight was medically unnecessary, certainly does not foster, indeed is inconsistent with, the fundamental principles of the program promulgated by the legislature.