558 A.2d 159

Forbes Metropolitan Health System, Petitioner *v.*
Commonwealth of Pennsylvania, Department of
Public Welfare, Respondent.

Argued October 6, 1988, before Judges BARRY and
SMITH, and Senior Judge BARBIERI, sitting as a panel of
three.

*R. Dell Ziegler,* with counsel, *Stephen H. Nimmo, Buchanan Ingersoll,* for petitioner.

*Jeffrey P. Schmoyer,* Assistant Counsel, with him, *Diane J. Bartels,* Assistant Counsel, for respondent.

OPINION BY JUDGE SMITH, May 3, 1989:

Forbes Metropolitan Health System (Petitioner) appeals from the Order of the Department of Public Welfare (DPW), Office of Hearings and Appeals (OHA), affirming the Attorney Examiner's recommendation that Petitioner's claim for increased payment for services to Medicaid patients be denied. The OHA order is affirmed.

The issue before this Court is whether DPW acted arbitrarily and capriciously, in violation of Petitioner's constitutional rights or contrary to the law regarding Pennsylvania's Prospective Payment System for Medicaid patients by: a) failing to include costs in Petitioner's base year for interest and depreciation expenses for Petitioner's moveable equipment; b) failing to use the per diem determined by the Auditor General in calculating Petitioner's base year per diem; and c) calculating Petitioner's average length of stay paid claims figure based on Petitioner's and not the Auditor General's count of medical assistance days.

Petitioner, Forbes Metropolitan Health System (formerly Columbia Health Center), is a Pittsburgh hospital participating in Pennsylvania's Medicaid Program. In 1980, in compliance with the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S.

§§448.701-448.712, Petitioner applied for and obtained a Certificate of Need (CON) from the Health Systems Agency of Southwestern Pennsylvania to build a new hospital. On January 6, 1981, the Secretary of Health for the Commonwealth approved Petitioner's application for approval of capital expenditures. Included in Petitioner's application for approval was a list of $4,000,000 of moveable equipment Petitioner planned to purchase. Petitioner's director of finance testified that fifty to seventy-five percent of the moveable equipment identified on this list was placed in service by April of 1984.

Respondent DPW is responsible for administering Pennsylvania's Medicaid Program. Pursuant to Title XIX of the Social Security Act, 42 U.S.C.A. §§1396a-1396q (West Supp. 1984-87), a state may participate in the Medicaid program after approval of the state's plan for medical assistance and reimbursement by the Secretary of Health and Human Services through his designee, the Health Care Finance Administration (HCFA). Prior to 1980, Title XIX required payment by the states on a reasonable cost-related basis. With the passage of the Boren Amendment in 1980, however, states were required to make assurances to the Secretary of Health and Human Services that rates of reimbursement were:

> [R]easonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal laws, regulations and quality and safety standards.

42 U.S.C. §1396a(13)(A) (West Supp. 1984-87).

In response to the Boren Amendment, DPW amended its regulations effective July 1, 1984 to provide for prospective payments for acute care in general hospitals based on diagnosis-related groups. 55 Pa. Code

§§1163.1-1163.501. All hospitals participating in Pennsylvania's Medicaid program were grouped into seven groups, each of which received different rates of payments for each diagnosis-related group performed. To cushion the hospitals from the changeover, DPW phased in the system over three years: the first year's rates were a blend of 75% hospital-specific (the old cost-related basis reimbursement system) and 25% group-specific; the second year's rates were 50% hospital-specific and 50% group-specific; and the third year's rates were entirely group specific. 55 Pa. Code §1163.53.

DPW also changed its treatment of major moveable equipment in its July, 1984 amendments. Previously, DPW had separately reimbursed participating hospitals for depreciation and interest expense for major moveable equipment. The 1984 Amendments provided, however, that such expenses would be treated as part of the diagnosis-related groups payment. 55 Pa.Code §1163.54. In order to determine the rates of reimbursement under the 1984 amendment, DPW computed each hospital's per diem rate using the formula outlined in Section 1163.124. DPW chose to use 1981-82 base year costs for all hospitals to compute their per diems.

Preliminarily, it should be noted that this Court's scope of review of a DPW decision is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law, or whether any constitutional rights were violated. *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986). It should also be noted that a presumption of validity attaches to state agency action and that the burden of proof rests on the party seeking to have the action reversed. *Isadore v. Workmen's Compensation Appeal Board (Owens-Illinois),* 77 Pa. Commonwealth Ct. 346, 465 A.2d 1096 (1983). Finally, the Court notes

that great latitude is given to the states in dispensing their Medicaid funds and the reviewing court's role does not "extend to rethinking the political and financial concerns behind a particular payment plan". *Mississippi Hospital Association, Inc. v. Heckler,* 701 F.2d 511, 516 (5th Cir. 1983).

In its Amended Petition for Review, Petitioner alleges that:

'Petitioner's base year interest and depreciation expenses should have been increased to include its major moveable equipment for which approvals had already been received and financial commitments already made.'

*Id.* at 5a. As noted above, the 1984 Amendments provided that depreciation and interest expenses be part of the diagnosis-related group payment and that the base year of 1981-82 was to be used in calculating each hospital's level of diagnosis-related group payments. Petitioner had little depreciation expense and no interest expense relating to its moveable equipment in 1981-82. However, these amounts increased greatly in 1984 by which time Petitioner had placed in service most of the $4,000,000 of moveable equipment which Petitioner had identified in its 1980 Application for Approval of Capital Expenditures which had been approved by the Pennsylvania Secretary of Health in 1981. Petitioner argues that DPW should have allowed it an additional $115,977 of interest and depreciation for moveable equipment for its base year and that its base year rate should be re-calculated. By allowing the Petitioner to attribute these 1984 expenses to the base year, Petitioner argues, Petitioner's price per case, hospital-specific payments and its placement within one of the seven groups may be affected.

Petitioner argues that DPW's failure to allow these expenses was arbitrary and capricious, was in violation of

the 1984 regulations which required that the revised payment system be as equitable as possible, and further constituted a penalty against Petitioner. Other than the above noted violation of the spirit of the Preamble, Petitioner does not allege any procedural irregularities by DPW or failure of the agency to follow its own rules and regulations. Petitioner's argument is not persuasive. A similar argument was made in *Wilmac Corp. v. Heckler*, 633 F. Supp. 1000 (E.D. Pa. 1986) where Plaintiff challenged a DPW regulation which placed a moratorium on the interest and depreciation reimbursement for new beds. The court noted that although a CON is required by the Commonwealth in order to subsequently receive Medicaid reimbursements, "the converse, i.e., that the CON entitles a facility to capital reimbursement under Medicaid is unsupportable". *Id.* at 1009.

While mindful of the fact that the timing of events in regards to Petitioner's construction of the new hospital and DPW's amendment of its regulations worked to Petitioner's disadvantage, this Court cannot find that DPW's actions were arbitrary and capricious or otherwise unlawful. DPW's decision to treat the costs of moveable equipment as part of the diagnosis-related group payment was within its discretion as policy-maker for the Commonwealth's Medicaid program and was within the spirit of DPW's stated goal of cost containment. *See* Exhibit C-3.

Petitioner next challenges the base year per diem used by DPW for 1981-82 claiming that DPW's payment on a per diem basis less than that determined by the Auditor General was arbitrary and capricious and a denial of its equal protection rights. The 1984 amendments directed DPW to establish a hospital's specific cost per case by first identifying the hospital's last medical assistance audited per diem rate prior to fiscal year 1982-83 and, if necessary, bringing this rate forward to the 1981-

82 rate through a three-step mathematical process. Insofar as Petitioner's 1981-82 audit was not completed by the Auditor General at the time the July, 1984 calculation was performed, DPW used Petitioner's 1980-81 audited figures as specified by 55 Pa. Code §1163.124. The per diem subsequently determined by the Auditor General was $10.80 higher than the amount used by DPW. Attorney Examiner's Finding of Fact No. 20.

Petitioner argues that DPW was obligated to go back and correct the 1981-82 per diem once it received the audited figures. Petitioner further argues that DPW should not have used the deflated per diem in subsequent ratings but rather the corrected audited 1981-82 per diem. Petitioner does not argue that DPW failed to follow its regulatory formula in calculating the 1981-82 per diem, but asserts only that the Auditor General's audited per diem should have been used which would result in a higher payment. Petitioner relies on *Lancaster General Hospital v. Department of Public Welfare*, 112 Pa. Commonwealth Ct. 605, 535 A.2d 1238 (1988) and *Hazelton-St. Joseph Medical Center v. Department of Public Welfare*, 110 Pa. Commonwealth Ct. 342, 532 A.2d 521 (1987) to support this argument. Neither case is applicable for the reason that both involved errors in calculations of the diagnosis-related group rate of reimbursement. No such error is alleged here. Further, the regulations place no burden on DPW to re-calculate the hospital's specific rate merely because it receives an audited per diem higher than that utilized in the original calculation.[1]

Petitioner's third issue for review is that DPW incorrectly calculated its Average Length of Stay by using the

---

[1] Although only briefly addressed, Petitioner's equal protection claim is unsupportable. Petitioner has not established that it was classified or treated differently than any other groups. *See and compare In re Asbestos*, 829 F.2d 1233 (3rd Cir. 1987).

wrong figure for days of service provided. DPW regulations provide in pertinent part that a hospital's specific rate be calculated by:

> (3) Determining the average length of stay of a case in the hospital during fiscal year 1981-82 by dividing the total days for that hospital as identified in the Department's paid claims data by the number of Medical Assistance cases for the hospital for fiscal years 1981-82. For purposes of this computation, the number of Medical Assistance cases for fiscal year 1981-82 is identified as the number of inpatient invoices for the hospital for fiscal year 1981-82 based on the Department's paid claims data for fiscal year 1981-82.

55 Pa. Code §1163.124. DPW presented evidence, unrefuted by Petitioner, that the days and claims figures were derived from actual paid claims on file with the Department. Insofar as DPW's use of the actual paid claims figures was in accordance with its regulations, Petitioner's appeal as to this issue is denied.

This Court concludes that Petitioner has failed to maintain its burden of proving that DPW acted arbitrarily and capriciously, in violation of Petitioner's constitutional rights, or in contravention of applicable law with regard to the three items raised by Petitioner on appeal. Accordingly, the decision of OHA is affirmed.

## ORDER

AND NOW, this 3rd day of May, 1989, the order of the Director of the Office of Hearings and Appeals, Department of Public Welfare, is hereby affirmed.