562 A.2d 1021

ST. CHRISTOPHER'S HOSPITAL FOR
CHILDREN, Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF
PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 6, 1989.

Decided Aug. 16, 1989.

Ruth M. Siegel, Post & Schell, P.C., Harrisburg, for petitioner.

Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before BARRY and PALLADINO, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

St. Christopher's Hospital for Children (Petitioner) appeals an order of the Pennsylvania Department of Public Welfare (DPW) denying Petitioner's appeal which challenged the amount allowed and the method employed by DPW to determine reimbursements due Petitioner for two pediatric organ transplants for medical assistance recipients. For the reasons stated below we affirm.

The facts before us in this case are as follows. In November of 1984, Petitioner made an oral inquiry as to whether DPW would provide reimbursements for heart and liver transplant procedures under the medical assistance program. On November 19, 1984, DPW confirmed by letter that it would reimburse Petitioner for these procedures under its program exception regulation, and stated that "most transplant procedures are reimbursed at a rate negotiated between our Program Exception Unit and the hospital performing the transplant."

In a letter dated March 6, 1985, Petitioner requested a program exception from DPW for a heart transplant. Petitioner performed the heart transplant on March 19, 1985, without coming to any agreement with DPW as to the method to be employed to calculate the reimbursement. Petitioner, on March 20, 1985, received oral notification that DPW would employ a per diem method to calculate the reimbursement. By a letter dated April 4, 1985, Petitioner received written confirmation of the method to be employed to calculate the reimbursement.

Petitioner made a written request for a second program exception on June 4, 1985. This time the request was for a liver transplant. In a letter dated October 3, 1985, this request was approved, and Petitioner was notified that payment would be made on a per diem basis.

The record reflects that under the formula utilized by DPW, Petitioner received a reimbursement of $46,025 for

the heart transplant and $21,724 for the liver transplant. The costs to the Petitioner for these procedures amounted to $91,000 for the heart transplant and $112,259 for the liver transplant.

The following issues are raised by this appeal: 1) whether federal law controls the reimbursement of costs; and 2) whether the method utilized by DPW to determine the allowable reimbursement was consistent with state law.

■ Our review of DPW's medical reimbursement decisions is limited to a determination of whether the decision is supported by substantial evidence, is in accordance with the law, and does not violate any constitutional rights. *Episcopal Hospital v. Department of Public Welfare,* 107 Pa. Commonwealth Ct. 272, 528 A.2d 676 (1987).

■ The medical assistance program is a cooperative program between the federal and state governments.[1] Under this voluntary program, states submit a plan for medical assistance for approval. This plan sets forth the medical care which will be covered by the program. After the plan is approved by the federal government, the state is eligible for federal grants to cover a portion of the costs of the program. The federal statute and corresponding regulations are controlling when the care for which reimbursement is sought is contained in the federally approved state plan. However, if reimbursement is sought for care outside the federally approved state plan, the state need not comply with federal law.

The cost of organ transplants need not be covered by a federally approved state plan. *Ellis v. Patterson,* 859 F.2d 52 (8th Cir.1988); 42 U.S.C. § 1396b(i) (1982). In the instant case, at the time the procedures were performed, neither liver nor heart transplants were included in the federally approved state plan. Accordingly, we conclude that federal law is neither applicable nor controlling.

1. The applicable federal law is set forth at 42 U.S.C. §§ 1396–1396s (1982). The state statute is the Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 441–453.

▋ The remaining question to be answered is whether the reimbursement method employed is consistent with Pennsylvania law. In addition to the medical assistance available under the joint federal-state program, Pennsylvania provides for payments for additional medical care through what is known as its program exception regulation. At the time the transplants were performed in this case the applicable regulation appeared at 55 Pa.Code § 1101.32(c)[2] which stated in part that:

> The Department will, under extraordinary circumstances, pay for an exceptional type of medical service or item that is more elaborate than one for which the Medical Assistance program has an established fee.

Neither the program exception nor any other regulation of DPW specified the method that would be employed to determine the amount of reimbursement. In the instant case, as noted above, DPW decided to reimburse Petitioner for both transplants on a per diem basis, using a 1983–1984 base year cost figure plus a percentage inflation factor. Petitioner challenges this method of reimbursement because it was not negotiated and because the resulting payments constitute an unreasonable and inadequate reimbursement for the services provided.

At the time reimbursement was requested, DPW employed two methods to calculate reimbursement amounts. The first method, commonly referred to as the diagnostic related group (DRG) system, is a prospective payment method, and was the method used for most services. Under this method, patients are classified into groups of similar diagnoses, with each DRG being assigned a predetermined rate calculated to reflect the reasonable costs of services to patients in the specific classification. This method also includes what are known as outliers, which are payments in addition to those provided by the applicable DRG. An outlier is available when a patient has an unusually long hospital stay, or the care provided is extremely expensive.

---

**2.** This section of the code was amended on September 30, 1988, effective October 1, 1988, 18 Pa.B. 4418 (1988). A similar provision is now set forth at 55 Pa.Code § 1150.63.

The second method of calculating reimbursements employed by DPW was the cost reimbursement method. Under this method each institution is provided a per diem rate, calculated by averaging all medical services provided by the institution in a base year and then adding a factor each subsequent year to reflect the inflation of medical costs over time.

Petitioner argues that DPW should have employed a modified DRG outlier method. While we recognize that transplant procedures are very costly, the DRG outlier method requires that the procedure have an assigned DRG. Without an assigned DRG it is impossible to determine whether the patient involved has an unusually long hospital stay, given his diagnosis, or whether the costs exceed the DRG to such a degree as to qualify as an outlier. In the case now before us, no DRG existed for the transplant procedures in question. As a result, DPW did not commit either an error of law or abuse its discretion by failing to employ the method requested by Petitioner.

█ Because it was impossible to employ the method espoused by Petitioner, it was reasonable for DPW to use the remaining method contained within the medical assistance regulations. While the cost reimbursement method was used only for freestanding rehabilitation hospitals and psychiatric and substance abuse detoxification/rehabilitation units of general hospitals at the time in question, 55 Pa.Code § 1163.401, it had been the method employed for most procedures prior to the implementation of the DRG method. The uncontradicted evidence before the hearing officer showed that at least five other hospitals in Pennsylvania were reimbursed on a per diem basis for transplants. By applying the per diem to the program exceptions in this case, DPW was applying its regulations in a consistent manner. To have done otherwise would have resulted in a violation of the constitutional guarantee of equal protection.

█ DPW's interpretation of its own regulations is controlling unless it is inconsistent with the plain language of

the regulations or the statute under which the regulations are promulgated. *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980). Petitioner has failed to show that the method of reimbursement chosen by DPW was contrary to the law or regulations of Pennsylvania.

▪ Furthermore, the medical assistance program is intended to benefit recipients, not providers. *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986). The method of reimbursement employed by DPW was not shown to deprive recipients of necessary care. Nor does the Petitioner have any entitlement to have the full, or any particular percentage of costs reimbursed, for care provided to medical assistance patients. Therefore we conclude that DPW's method of determining reimbursements is consistent with state law.

Accordingly, the order of the Department of Public Welfare is affirmed.

## ORDER

AND NOW, August 16, 1989, the order of the Department of Public Welfare is affirmed.