611 A.2d 1359

**Cheryl WALIZER, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1992.

Decided June 15, 1992.

Petition for Allowance of Appeal
Denied Jan. 13, 1993.

518

Ellis M. Saull, for petitioner.

Kathleen Harrington, Asst. Counsel, for respondent.

Before DOYLE and SMITH, JJ., and LEDERER, Senior Judge.

LEDERER, Senior Judge.

Cheryl Walizer (Petitioner) filed a petition for review with this Court upon the issuance of the Final Order of the Secretary of the Department of Public Welfare (DPW) denying payment for the use of an air ambulance utilized on behalf of Petitioner under emergency conditions to save her infant daughter from death.[1]

On December 21, 1989, a "Program Exception Request," seeking payment for the use of the air ambulance was sent to the Office of Medical Assistance (OMA), Administrative Waiver Unit, (AWU), by Dr. E. Eshaghpour of Thomas Jefferson University Hospital in Philadelphia.

The air ambulance had been employed between Philadelphia and Boston on expert medical advice to allow doctors at

---

1. On May 17, 1991, Secretary White issued a Final Order vacating the January 23, 1991 Order of the Office of Hearings and Appeals, stating that payment for the use of the Lear Jet Ambulance may not be made.

Boston's Childrens Hospital to perform complicated open heart surgery upon Petitioner's two-month-old daughter, Catherine E. McCarthy. Due to the weather conditions and the worsening condition of the infant, there was no other alternative but to use the Lear Jet Ambulance.[2]

On June 6, 1990, the AWU denied the request for payment because the provider (Lear Jet Ambulance) was not enrolled in DPW's Medical Assistance Program (MA Program). Petitioner timely appealed the decision and a fair hearing, as prescribed under DPW regulations set forth in 55 Pa.Code §§ 275.1–275.4, was conducted by Hearing Officer Howard–McNeill by telephone on August 27, 1990.

The hearing officer made four findings of fact:

(1) that petitioner was an eligible Medical Assistance recipient; (2) that AWU received Dr. Eshaghpour's request for payment of the air ambulance on January 5, 1990; (3) that AWU denied payment on June 6, 1990, and (4) that petitioner filed a timely appeal on June 27, 1990.

In her discussion, the hearing officer recited the brief yet complicated medical history of petitioner's daughter which led to the emergency request for an air ambulance to take her to Boston for open heart surgery. The hearing officer also outlined DPW's position that two threshold requirements must be met before payment is allowed: (1) the recipient must be eligible for medical assistance, and (2) the provider must be enrolled in the MA Program. The hearing officer determined from the facts that petitioner met the regulatory waiver requirements of 55 Pa.Code § 1150.63(b) because she demonstrated extraordinary circumstances in having to utilize the air ambulance, and therefore issued an order on November 27, 1990 requiring DPW to authorize payment.

■ After DPW's Office of Hearings and Appeals issued an order which affirmed the hearing officer's order, the DPW filed a request for reconsideration with the Secretary. Recon-

---

**2.** Although the surgery performed on Catherine was successful, she ultimately died from post-operative complications on February 1, 1990 at Thomas Jefferson University Hospital.

sideration was granted, and on May 17, 1991 the Secretary denied payment for the use of the air ambulance. This appeal followed.[3]

The issue of whether or not payment may be made to a provider not enrolled in the MA Program under the waiver provisions of 55 Pa.Code 1150.63 appears to be a question of first impression for this Court.

In general, the MA Program provides for:

payments for specific medically necessary medical services and items covered by the Program and furnished to eligible recipients by approved providers enrolled in the Program. Payment for these services and items is subject to the provisions and limitations of this chapter, Chapter 1101 (relating to general provisions), and the specific chapters for each provider type.

55 Pa.Code § 1150.1.

The primary goal of the MA Program is to provide necessary medical assistance to those recipients who would otherwise be unable to afford it. *See Harston Hall Nursing v. Department of Public Welfare*, 99 Pa.Commonwealth Ct. 475, 513 A.2d 1097 (1986). However, since not all services and items are covered under the MA Program's established fee schedule, DPW's regulations include a waiver provision. Section 1150.63 provides in pertinent part as follows:

(b) The Department, under extraordinary circumstances, will pay for a medical service or item that is not one for which the MA Program has an established fee. If a practitioner concludes that lack of the service or item would impair the recipient's health, the practitioner may either give the recipient the prescription or order to take to the

3. Our scope of review of a DPW decision denying medical assistance is limited to a determination of whether the adjudication was in accordance with the law, whether any constitutional rights were violated and whether all necessary findings of fact were supported by substantial evidence. *Park v. Department of Public Welfare*, 135 Pa.Commonwealth Ct. 457, 582 A.2d 1138 (1990).

County Assistance Office (CAO), or send the prescription or order to the CAO by mail.

55 Pa.Code § 1150.63(b).

DPW does not dispute that Petitioner's circumstances were extraordinary. Instead, it argues that the waiver only applies if the provider is enrolled in the MA Program. Section 1150.63 does not address the issue of payment to unenrolled providers, however, and thus does not establish DPW's position. On the contrary, DPW regulations provide that to the extent a general chapter does not address a reimbursement question answered by a regulation contained in a specific provider chapter, the regulation contained in the specific chapter controls. *See* 55 Pa.Code §§ 1150.1 and 1150.51(b).

The specific service that was provided to Petitioner's daughter, the Lear Jet Ambulance, is governed by Chapter 1245, "Ambulance Transportation." 55 Pa.Code §§ 1245.1–1245.81. Section 1245.1 states that the MA Program will pay for ambulance transportation provided by ambulance services enrolled in the program. 55 Pa.Code § 1245.1. However, in emergency situations, the program will pay for ambulance service to a clinic or hospital which is not enrolled in the program. 55 Pa.Code § 1245.54(3). Furthermore, the MA Program will pay for ambulance transportation out of state if the nearest appropriate medical facility is located out of state. 55 Pa.Code § 1245.54(7).

It is clear then that under extraordinary or emergency circumstances the MA Program will pay for services and items not otherwise covered in the fee schedule. While there is no provision explicitly authorizing payment to an unenrolled ambulance provider, if the MA Program will pay for transportation to unenrolled and out of state providers in emergency situations, then arguably, these regulations contemplate paying for the ambulance transportation necessary to reach these facilities, regardless of whether or not the ambulance service itself is an enrolled provider.

Accordingly, for the foregoing reasons, the Order of May 17, 1991 issued by the Secretary of the Department of Public Welfare is reversed. The Department is directed to pay for

the Lear Jet Ambulance Service that was provided on behalf of Petitioner's daughter.

## ORDER

AND NOW, this 15th day of June, 1992, the Final Order of the Secretary of the Department of Public Welfare is hereby reversed.