**Cozen O'CONNOR, Appellant**

v.

**CITY OF PHILADELPHIA BOARD OF ETHICS and City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Feb. 24, 2009.

Decided March 12, 2009.

Stephen A. Cozen and Adam C. Bonin, Philadelphia, for appellant.

Gregg W. Mackuse, Philadelphia, for appellee, City of Philadelphia Board of Ethics.

BEFORE: PELLEGRINI, Judge,
COHN JUBELIRER, Judge, and
LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The law firm Cozen O'Connor (the Firm) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) dismissing its complaint and finding that it does not have standing to challenge the Philadelphia Board of Ethics' (Board) advisory opinion. For the reasons below, we affirm.

On January 25, 2007, Robert Brady (Brady) announced his candidacy for the Democratic nomination for Mayor of Philadelphia. Pursuant to Section 20–803 of the Philadelphia Code, he established the Friends of Bob Brady campaign committee (Committee) to handle his campaign contributions and expenditures. Thomas Knox (Knox), who was also campaigning for the nomination, using his own personal funds, contested the legal validity of Brady's candidacy by alleging that there were fatal defects in the Statement of Financial Interest which Brady had filed along with his Nominating Petition. The Committee secured the legal services of the Firm to represent Brady in the litigation caused by the dispute. Ultimately, a trial court issued an order determining that Brady had at all times acted ethically and his Statement of Financial Interest was completed to the best of his knowledge. Knox appealed to this Court and Brady petitioned our Supreme Court to exercise plenary jurisdiction over the matter so it could be resolved as quickly as possible. The Pennsylvania Supreme Court declined to hear the matter, and this Court issued an opinion agreeing with the trial court that Brady belonged on the ballot. Knox appealed our decision to the Pennsylvania Supreme Court which denied the petition for allowance of appeal ending the litigation.

After the Democratic Party primary was held, Brady did not obtain his party's nomination. The Committee was left with $593,555.42 in campaign debt, including $448,468.09 owed to the Firm for legal fees incurred during his campaign. On July 27, 2007, the Committee requested an advisory opinion from the Board as to whether payments made to the Committee after the election and for the purpose of retiring campaign debts were still subject to the campaign contribution limitations set forth in Sections 20–1002(1) and (2) of the Philadelphia Code. The Board issued an advisory opinion stating that it interpreted "Chapter 20–1000 of the Philadelphia Code to prohibit contributions that exceed the limits of Section 20–1002 [1] and that are received after an election to retire campaign debt that was incurred for use in advocating or influencing the election of the candidate."

---

1. Section 20–1002 provides, in relevant part:
   (1) Except as provided in subsection (6), no individual shall make total contributions per calendar year, including contributions made to or through one or more political committees, of more than two thousand five hundred dollars ($2,500) to a candidate for City elective office.
   (2) Except as provided in subsection (6), no person, other than individuals who are covered under § 20–1002(1), and no political committee shall make total contributions per calendar year of more than ten thousand dollars ($10,000) to a candidate for City elective office.
   (3) During those calendar years in which a covered election is not occurring, candidate shall be limited in receiving political committee contributions as follows:
      (i) candidates for Mayor may receive political committee contributions totaling no more than two hundred fifty thousand dollars ($250,000) per year.

The Firm then filed a complaint against the Board and the City of Philadelphia (the City) seeking a declaratory judgment that the legal expenses incurred by the Committee were not "expenditures" as defined under Section 20–1001(10) of the Philadelphia Code, and that post-election contributions were not "contributions" as defined under Section 20–1001(6) of the Philadelphia Code. The Board and the City filed preliminary objections to the complaint arguing that there was no actual case or controversy between the parties or a final adjudication sufficient to invoke Pennsylvania's Declaratory Judgment Act, 42 Pa.C.S. § 7531, because advisory opinions could not be challenged in court. In the alternative, the Board and the City argued that if the advisory opinion was deemed to be a final adjudication creating a right to appeal, the trial court lacked subject matter jurisdiction because the Committee had failed to timely file a complaint within 30 days after the entry of the "final adjudication." Finally, the Board and the City argued that regardless of whether the advisory opinion was reviewable, the Firm lacked standing to pursue this action because, by its own admission, it was a mere unpaid "campaign vendor" which did not constitute the direct, substantial or immediate interest that was necessary to confer standing to challenge the advisory opinion.

▉▉▉▉ The trial court sustained the preliminary objections and dismissed the Firm's complaint with prejudice finding that it did not have a direct, substantial and present interest in the litigation between the Board and the Committee. The trial court stated, "its relationship in re-

ceiving payment is too tenuous to constitute a direct interest in this litigation. This Court dismissed the complaint with prejudice because Cozen has no standing to prosecute this action. Further, an advisory opinion is not a final adjudication subject to review by this Court. *See* 2 Pa. C.S. § 101; Phila. Code. § 20–606(h). Any ruling made by this court would be essentially another advisory opinion. *Rendell v. Pa. State Ethics Comm'n*, 938 A.2d 554, 560 (Pa.Cmwlth.2007)." (Trial court's November 13, 2008 opinion at 2.) This appeal by the Firm followed.[2]

The Firm contends, among other things, that it has standing independent of the Committee because it can show that it is aggrieved as it cannot collect within a reasonable amount of time the $448,468.09 it is owed in legal fees giving it the substantial, direct and immediate interest in the outcome of the litigation that would give it standing to maintain the appeal. *In re Milton Hershey School*, 590 Pa. 35, 911 A.2d 1258 (2006); *William Penn Parking Garage, Inc.*, 464 Pa. 168, 202, 346 A.2d 269, 286 (1975). It also explains that the legal fees were incurred when Brady's candidacy for Mayor was challenged "through a relentless effort by a multi-millionaire opponent." (Firm's brief at 15.) Brady turned to the Firm to defend him "for what turned out to be six weeks of extensive, expedited non-stop litigation." *Id.* The sole purpose for retaining the Firm and the fees it charged the Committee was to "defend Congressman Brady's legal right to remain on the ballot." *Id.* It argues that the Board's interpretation of the legislative language imposes a significant pecuniary burden on the Firm impacting its ability to provide legal services

---

**2.** Our standard of review of an order of the trial court sustaining preliminary objections in the nature of a demurrer is limited to determining whether the trial court abused its discretion or committed an error of law. In ruling on preliminary objections, the court must accept as true all well pled allegations of material fact. *Musewicz v. Cordaro*, 925 A.2d 172 (Pa.Cmwlth.2006).

to any future candidate to protect his ballot status.

At the core of the Firm's argument is that the Board's interpretation of the Philadelphia Campaign Finance Law frustrates the Committee's efforts to raise funds to retire campaign debt, particularly its legal fees. The question then simply becomes whether a creditor of a campaign committee has the direct, substantial interest necessary for standing.

Instructive to resolution of this issue is our decision in *Beverly Healthcare–Murrysville v. Department of Public Welfare,* 828 A.2d 491 (Pa.Cmwlth.2003). In that case, a nursing home operator who provided care for a patient challenged the denial of an application for medical assistance so that it could get paid for care that it rendered to that patient. In holding that it did not have standing to make the challenge, we stated:

> [Nursing home] lacks standing even under the traditional standing standard that one must be an aggrieved party to have standing. *Beers v. Unemployment Compensation Board of Review,* 534 Pa. 605, 633 A.2d 1158 (1993). To be considered aggrieved, the party must have a direct, immediate and substantial interest in the outcome of the appeal. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). An interest is "direct" for the purpose of standing when a person claiming to be aggrieved may suffer harm to his or her interest from the outcome of the appeal. *Upper Bucks County Vocational–Technical School Education Ass'n v. Upper Bucks County Vocational–Technical School Joint Committee,* 504 Pa. 418, 474 A.2d 1120 (1984). An interest is "immediate" when the protection of the type of asserted interest is among the policies underlying the legal rule relied on by the person claiming to be aggrieved. *Id.* A finding that a party has no standing simply means that the asserted interest is not protected by a statute. Wm. Penn Parking Garage.
>
> It is well established that the medical assistance program is intended to benefit recipients, not providers. *St. Christopher's Hospital for Children v. Department of Public Welfare,* 128 Pa. Cmwlth. 144, 562 A.2d 1021 (1989); *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986). Therefore, the interest of [nursing home], as a creditor against [patient's] estate, in the outcome of the determination of eligibility for medical assistance, is neither direct nor immediate. Beverly's collateral concern for the outcome of the appeal does not satisfy the traditional standing requirement. Wm. Penn Parking Garage. (footnote omitted).

828 A.2d at 496–497.

■ Even assuming the "advisory" opinion was not "advisory" but final, the Firm is not aggrieved because it does not have a direct, immediate and substantial interest in the outcome of the appeal. The Philadelphia Code governs candidates and committees of candidates on how much money they can receive from different types of contributors. It does not mention unpaid creditors. Just as a creditor against a patient's estate lacks standing to challenge the denial of medical assistance to pay for services that it rendered to the patient, because that claim is neither direct nor immediate, so, too, is a claim by a creditor law firm who rendered services to a candidate's committee who lost the election. As in the case of the nursing home, the Firm's claim is a collateral concern that does not satisfy the traditional standing requirement. *Wm. Penn Parking Ga-*

*rage.* Because the Firm lacks standing, we need not address any of the other issues it has raised.

Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this *12th* day of *March,* 2009, the order of the Philadelphia County Court of Common Pleas, dated June 10, 2008, is affirmed.