Leader Nursing Centers, Inc. etc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Leader Nursing Centers, Inc. etc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Wilmac Corporation etc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

54

Argued May 12, 1983, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

*Joel M. Hamme, Pierson, Ball & Dowd,* for petitioner, Leader Nursing Centers, Inc., etc.

*Charles O. Barto, Jr., Killian & Gephart,* for petitioner, Wilmac Corporation, etc.

*John A. Kane,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., April 25, 1984:

Leader Nursing Centers, Inc. (Leader) and Wilmac Corporation (Wilmac) have filed separate appeals from the order of the Secretary of Public Welfare disallowing reimbursement of employee meals under the Pennsylvania Medical Assistance (Medicaid) Program,[1] Sections 441.1-453 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §§441.1-453. The appeals have been consolidated due to the similarity in factual and legal issues involved.

Both Leader and Wilmac are engaged in the ownership and operation of nursing facilities throughout the Commonwealth of Pennsylvania. Both corporations provide long-term skilled nursing and intermediate care services to Medicaid patients pursuant to the Pennsylvania Medicaid Program. The Pennsylvania Department of Public Welfare (DPW), the agency authorized to administer Pennsylvania's Medicaid Program, conducts audits of the appellants' nursing facilities at the end of each fiscal year, and

---

[1] The Pennsylvania Medical Assistance Program (Medicaid) is a program jointly funded by the state and federal governments to provide medical services to persons who could not otherwise afford adequate medical care. Pursuant to Title XIX of the Federal Social Security Act, 42 U.S.C. §§1396 *et seq.*, federal monies are available to states which present and adhere to a plan for provision of medical assistance which meets federal standards and is approved by the United States Secretary of Health and Human Services (formerly, Health, Education and Welfare). Federal guidelines afford the states wide latitude in determining the types of medical services which shall be covered by their plans. However, the federal statute has been construed to require that states receiving federal Medicaid funds provide at least those services which are "medically necessary" for the health of patients financially eligible for the program. *See Marsh v. Department of Public Welfare*, 48 Pa. Commonwealth Ct. 216, 409 A.2d 926 (1979).

based on those audits, reimburses Leader and Wilmac for certain allowable costs associated with their provision of services to Medicaid patients. For the period January 1, 1978 through December 31, 1978, Leader sought reimbursement from DPW for costs it incurred in providing free meals to its employees in twelve of its nursing facilities. Wilmac sought similar reimbursement for costs incurred at four of its facilities during the period July 1, 1976 through October 1, 1978.[2] DPW disallowed reimbursement for these costs, and Leader and Wilmac submitted timely requests for hearings on the disallowance. By agreement of all parties, the cases were consolidated for hearing, which was held on May 6, 1981 before a hearing officer of DPW's Office of Hearings and Appeals. On November 25, 1981, on the basis of the recommendation and findings of the hearing officer, the Office of Hearings and Appeals sustained the claims for reimbursement of costs of employee meals incurred prior to October 1, 1978, but disallowed reimbursement for costs incurred after that date. October 1, 1978 is the effective date of a new section of the state regulatory manual which governs Medicaid reimbursements for skilled nursing and intermediate care facilities.

All parties sought reconsideration of the decision of the Office of Hearings and Appeals by the Secretary of Public Welfare. Leader and Wilmac sought reconsideration of so much of the order as disallowed

---

[2] Wilmac also sought reimbursement for costs incurred in funding Christmas parties and picnics for its employees and of making contributions to local police and fire fighting organizations. DPW disallowed reimbursement of these costs, and Wilmac appealed. The Office of Hearings and Appeals affirmed the disallowance, as did the Secretary of Public Welfare. As Wilmac took no appeal from this aspect of the Secretary's order, the allowability of reimbursement of these costs is not before us.

reimbursement for costs incurred after October 1, 1978, while DPW sought reconsideration of the allowance of costs incurred before October 1, 1978. By final order dated December 30, 1981, the Secretary reversed the order entered by the Office of Hearing and Appeals to the extent that it allowed reimbursement of the cost of employee meals incurred prior to October 1, 1978. The Secretary disallowed reimbursement to Leader on the grounds that costs for employee meals are not ''costs . . . necessary for patient care, and because Leader was aware of DPW's policy not to reimburse general nursing facilities for the cost of employees meals.'' Reimbursement to Wilmac was disallowed on the grounds that its costs of employee meals were not treated as a fringe benefit to employees, and were not related to patient care. These appeals followed.

We begin our analysis of these appeals with a discussion of what we perceive to be the governing standards for determining when, if ever, employee meals are reimbursable to nursing home providers under the Medicaid Program. Pursuant to its authority to administer the state Medicaid Program, DPW, by memorandum dated October 24, 1975, adopted a ''Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual). The Manual was to be used for determining Medicaid reimbursements to general nursing facilities, including those subject to these appeals, for periods beginning on and after July 1, 1976. As originally published,[3] relevant portions of the Manual read:

III Costs reimbursement principles and methods.

---

[3] 5 Pa. B. 2928-34 (1975).

Facilities will be reimbursed their allowable costs . . . if applicable for the facility within statewide group ceilings on net operating costs plus allowable depreciation and interest. Allowable costs are those costs necessary and reasonable for the proper care of Medical Assistance patients.

IV Standards for general and selected costs.

The standards listed below are established to provide guidance in determining whether certain selected cost items will be recognized as allowable costs. In the absence of specific instructions or guidelines in the manual, facilities will follow the guidelines and policies in the Medicare Provider Reimbursement Manual contained in HIM [Health Insurance Manual] 15.

[Subsections A through E set forth guidelines for determining allowable cost for such specific expenses as administrative expenses, dietary and housekeeping services, social service professionals, pastoral, rehabilitative and recreational services, support of volunteer services, and management consultants.]

F. Expenses and revenue items excluded from net operating costs.

. Certain expenses and revenues are excluded because they are not normally incurred in providing patient care.

1. Expenses to be excluded

a. Non-working officers' salaries

b. Fund raising expenses for capital and replacement items exceeding 5% of the amount raised

c. Free care or discontinued services

d. Parties and social activities not related to patient care

e. Organizational memberships not related to patient care

f. Personal telephone service

g. Personal radio and television service

h. Gift, flower and coffee shops

i. Vending machines

2. Cost of Services Related to Revenues that will Reduce Applicable Allowable Costs

a. Costs related to revenues from laundry and linen service

b. *Employee and guest meals*

c. Sale of drugs to other than patients

d. Sale of medical and surgical supplies to other than patients

e. Sale of medical records and abstracts

f. Rental of quarters to employees and others

g. Rental of space

h. Payments received from specialists

i. Trade, quantity, time and other discounts on purchases

j. Rebates and refunds of expenses (Emphasis added.)

The Manual was revised, effective October 1, 1978, to include "employee meals" at Section IV(F)(1)(K) as an expense to be excluded from net operating costs.

As stated in the above-quoted sections of the Manual, the federal policies and guidelines which apply to the Medicare program are controlling when a matter of reimbursement is not specifically addressed by instructions or guidelines contained in the Manual. The Medicare policies and guidelines contained in HIM 15, read in pertinent part:

*Costs Related to Patient Care* (Prov. Reimb. Man., Part 1, §2102.2)

These include all necessary and proper costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. Necessary and proper costs related to patient care are usually costs which are common and accepted occurrences in the field of the provider's activity. They include costs such as depreciation, interest expenses, nursing costs, maintenance costs, administrative costs, costs of employee pension plans, and normal standby costs, and others. Allowability of costs is subject to the regulations prescribing the treatment of specific items under the Medicare program.[4]

*Fringe Benefits Includable As Provider's Cost* (Prov. Reimb. Man., Part 1, §2144.4)

Medicare recognizes the following fringe benefits:

. . .

E. provider's unrecovered cost of meals . . . and room and board furnished employees for their convenience; . . .[5]

*Cost Of Meals For Provider Personnel* (Prov. Reimb. Man., Part 1, §2145)

Any reasonable unrecovered cost of a provider's personnel meals is allowable when deemed a fringe benefit related to patient care. Also, any reasonable unrecovered cost

---

[4] Adopted February of 1969.

[5] As originally adopted in December of 1971, the section stated ". . . provider's cost of meals. . . ." The section was revised in April of 1978 to state ". . . provider's unrecovered cost of meals. . . ."

of a provider's personnel meals when deemed solely for the provider's benefit and related to patient care is allowable under the principle in §2102.2. An example of the latter is the cost of meals served to selected personnel who must remain on call to provide patient care on the provider's premises during mealtime and the cost of the meals is not deemed a fringe benefit.[6]

Our review of these regulations and the relevant case authority convinces us that neither prior to nor after October 1, 1978, was there any categorical preclusion on reimbursement of costs incurred by Medicaid providers for employee meals. We note that, as originally promulgated, the Manual did not designate costs of employee meals as expenses to be excluded from net operating costs. Since the cost of employee meals, *per se,* was not specifically addressed by the Manual, the Medicare guidelines were to be consulted. It is clear from the above-quoted sections that throughout the period addressed by these appeals, Medicare standards allowed for reimbursement of the cost of a provider's personnel meals, at least insofar as the meals represented a fringe benefit to employees and were related to patient care. Thus, the guidelines to which we are directed by the Manual itself strongly support out conclusion that, for at least the period prior to October 1, 1978, costs for employee meals were reimbursable if the meals were bona fide fringe benefits and provision of the meals were related to patient care. Our conclusion is further buttressed by the decision of this Court in *Mead Nursing Home v. Department of Public Welfare,* 59 Pa. Commonwealth Ct. 539, 430 A.2d 379 (1981). The appellant in *Mead* was challenging DPW's disallowance of

---

[6] Adopted April of 1978.

reimbursement for costs associated with the provision of employee meals. DPW contended that Manual Section IV F(1)(K), which became effective October 1, 1978, specifically excluded employee meals from the determination of allowable costs. The Court, per Judge MENCER, held that Section IV F(1)(K) had to be read in conjunction with Section IV C(1), which allows for reimbursement of employee salaries and fringe benefits: "[t]herefore, to receive reimbursement, the facility was required to establish that the employee meals were provided as bona fide fringe benefits." If employee meals which qualify as fringe benefits are an allowable cost in spite of the adoption of a regulation which, if applied independently, would exclude such costs, then surely such costs were allowable before the exclusionary regulation was adopted.

With respect to the period after October 1, 1978, *Mead* establishes that the adoption of Section IV F(1)(K) effected no change in the standards for allowability of costs for employee meals. Consistent with Section IV (C)(1) of the Manual and the guidelines provided by HIM 15, reimbursement continued to be available for costs of employee meals which were bona fide fringe benefits and which were related to patient care.

We are unpersuaded by DPW's contention that *Mead* is not controlling in these cases. DPW argues that the issue of the general allowability of employee meal costs was not reached since we found that the facility in *Mead* had failed to maintain records and introduce evidence to support its claim for reimbursement. This argument is difficult to fathom in light of Judge MENCER's explicit statement regarding the substantive requirements for reimbursement for employee meals. Furthermore, it is apparent that the Court would never have had reason to address the

absence of records and evidence if there were a categorical preclusion on reimbursement of such costs.

We are equally unpersuaded by DPW's contention that only services which are "medically necessary" satisfy the requirements of Section III of the Manual. That section describes allowable costs as ". . . those costs necessary and reasonable for the proper care of Medical Assistance patients." Nothing in this statement or in any other authority brought to our attention suggests that allowable costs are limited to those which are minimally medically necessary. On the contrary, both the federal Social Security Act and the Pennsylvania Medicaid plan contemplate the availability of non-medically necessary as well as medically necessary services for eligible participants.[7] Furthermore, the Manual itself provides for reimbursement of costs—such as for social workers, pastoral services, recreational services and fund raising—which by even the most attenuated logic could hardly be deemed "medically necessary." Thus, if DPW interpreted its Manual as imposing a "medical necessity" standard for allowable costs, that interpretation would be inconsistent with those provisions of the Manual which specify non-medically necessary costs as allowable cost items. DPW refers us to no relevant authority which supports the imposition of such a standard in this context. Nor does DPW refer us to any record evidence that the agency has interpreted the regulations in that fashion. Even if there were such evidence, we would not be bound by DPW's interpretation. While we recognize that, in most instances, an agency's interpretation of its own regulations is entitled to considerable weight,

---

[7] *See* 42 U.S.C. §1396d(a); Section 1101.31 of the Medical Assistance Manual, 55 Pa. Code §1101.31.

*Medicenter Hospital v. Department of Public Welfare,* 78 Pa. Commonwealth Ct. 610, 468 A.2d 1156, 1158 (1983), such deference is inappropriate when the interpretation proffered by the agency is nonsensical and contrary to all relevant administrative and decisional precedent. *See Klingerman Nursing Center v. Department of Public Welfare,* 73 Pa. Commonwealth Ct. 470, 458 A.2d 653 (1983). To summarize, based on our reading of the relevant regulations and decisional authority, we conclude that, for the period covered by these appeals, employee meal costs were reimbursable if (1) the meals were provided as a bona fide fringe benefit, and (2) the provision of the meals was related to patient care.[8]

Having addressed the general standards which apply to reimbursement of personnel meal costs, we now consider the appropriateness of the Secretary's order with respect to Leader and Wilmac. Our scope of review of such orders is limited to a determination of whether or not the adjudication was in accordance with the law, whether or not any constitutional rights

---

[8] DPW contends that reimbursement of the cost of employee meals was specifically foreclosed by Section IV F(2) of the Manual. This section, headed "Costs of *Services Related to Revenues* that will Reduce Applicable Allowable Costs," (emphasis added) is separate and distinct from Section IV F(1), which enumerates costs to be excluded. DPW fails to explain why it was necessary to amend IV F(1) to exclude the cost of employee meals if those costs were already categorically excluded pursuant to Section IV F(2). Furthermore, DPW states in its brief and in testimony of its witnesses that its adoption and interpretation of Section IV (F)(2) was predicated on an assumption ". . . that nursing facilities were charging their employees a reasonable price for meals." DPW fails to explain why this section is applicable to a facility which provides meals to its employees for a "nominal" charge, as is asserted by Wilmac, or completely free of charge, as in the case of Leader. In any event, Section IV (F)(2) was not the basis for the Secretary's disallowance of reimbursement in these cases.

were violated, and whether or not the findings of fact on which the decision was based were supported by substantial evidence. *Klingerman Nursing Center; Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981). The hearing examiner made the following critical factual findings:

14. During the period at issue in this portion of the case (January 1, 1978 to December 31, 1978), the Leader and its 12 facilities involved in this appeal provided employees with free meals during their one half hour unpaid breakfast, lunch or dinner. This policy was uniformly applied by Leader to all of its facilities work shifts and to all of its full and part time employees.

15. For the periods at issue in this portion of the appeal (January 1, 1978 to December 31, 1978), the 12 facilities of the appellant Leader which are involved in this case reported the costs of employee meals on their Medicaid cost reports. DPW disallowed those costs in full for Medicaid reimbursement purposes.

16. Leader has, for the same periods involved in this appeal as well as for earlier and later periods, reported the costs of employee meals on their *Medicare* cost reports, and the Medicare program has always allowed those costs in full as reimbursable fringe benefit under the Federal Medicare program.

17. Wilmac employees paid for their meals during the period July 1, 1976 to October 1, 1978.

18. Wilmac offset revenues received on employee meals against the costs of providing

meals in accordance with their interpretation of the provisions of Reimbursement Manual Section IV (F)(2)(b).

. . . .

25. Employees of both appellants receive a one half hour meal, during which time they are not required to be on standby duty and they are free to leave the premises if they so choose.

26. Meals furnished to employees for consumption on the employer's premises under the circumstances herein increase employee benefits, morale, help to prevent employee turnover and, in case of unusual patient needs or emergencies, insure (sic) to patients' benefit.

Our review of the records leads us to conclude that these findings are supported by substantial evidence. However, application of the appropriate legal standards, which we set forth earlier in this opinion, dictates different results as between Leader and Wilmac.

Both the Secretary and DPW appear to concede that Leader furnished meals to its employees as a fringe benefit. It is uncontroverted that the cost of the meals was treated as a fringe benefit by Leader, not only with respect to its Medicaid/Medicare reporting, but also with respect to the manner in which it reported taxes under the Federal Insurance Contribution Act ("FICA"). Furthermore, Leader's cost of providing employee meals was determined a fringe benefit under Medicare standards for the period covered by this appeal and earlier. Accordingly, we have no difficulty concluding that Leader satisfied its burden of establishing that the meals constituted a fringe benefit. Similarly, we have no difficulty deciding that the provision of these meals was related to patient care. The hearing examiner

so found. This finding is supported by testimony that provision of the meals ensured that Leader's employees, many of whom perform strenuous work during hours when balanced meals are not commercially accessible, have available to them hot, nutritious food; and encouraged employees to remain on the premises during their meal periods in case they are needed for extraordinary emergencies. Accordingly, we conclude that Leader has satisfied the standards for reimbursement of its employee meal costs.

We reach a different result with respect to Wilmac. Neither the hearing officer's findings nor the record supports a determination that Wilmac's provision of meals to its employees constituted a fringe benefit. Wilmac did not treat the meals as a fringe benefit to employees for FICA purposes. Furthermore, the meals would not qualify as a fringe benefit, which is taxable as gross income to employees under federal income tax regulations.[9] As Wilmac has failed to show that its provision of employee meals qualified as a fringe benefit, we need not reach the question whether its provision of the meals was related to patient care.

---

[9] Under Federal Income Tax Regulation §1.119-1(a)(1), 26 C.F.R. 1.119-1(a)(1), meals provided by an employer are not includable as a fringe benefit in an employee's gross income unless (1) the meals are provided on the business premises of the employer, and (2) the meals are furnished for the convenience of the employer. Where an employer furnishes meals with a charge, as did Wilmac, Reg. §1.119-1(a)(3) states:

> If an employer provides meals which an employee may or may not purchase, the meals will not be regarded as furnished for the convenience of the employer. Thus, meals for which a charge is made by the employer will not be regarded as furnished for the convenience of the employer if the employee has a choice of accepting the meals and paying for them or of not paying for them and providing his meals in another manner.

Accordingly, we reverse the order of the Secretary of Public Welfare with respect to Leader. With respect to Wilmac, the order of the Secretary is affirmed.

## ORDER

AND Now, this 25th day of April, 1984, the Order of Commonwealth Secretary of Public Welfare is reversed to the extent that it denied reimbursement of costs of provision of employee meals to Leader Nursing Centers, Inc. To the extent that the Secretary denied reimbursement to Wilmac Corporation, the Order is affirmed.