582 A.2d 1128

**Frank L. RIZZO,**

v.

**CITY OF PHILADELPHIA; Mayor W. Wilson Goode; Peter Crescitelli, Director, Board of Pensions and Retirement; Elizabeth Reveal, Jointly in her capacity as Chairperson of Board of Pensions and Retirement and Finance Director; Willie L. Williams, Police Commissioner; Seymour Kurland, City Solicitor; James Stanley White, Managing Director; John G. Smithyman, City Controller; Benjamin Blakney, City Treasurer; and Kevin M. Tucker.**

**Appeal of Kevin M. TUCKER, Appellant.**

**Frank L. RIZZO,**

v.

**CITY OF PHILADELPHIA et al.**

**Appeal of CITY OF PHILADELPHIA et al., Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 7, 1990.

Decided Sept. 7, 1990.

Reargument Denied Nov. 8, 1990.

14

Mark A. Aronchick, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, for appellant, Kevin M. Tucker.

Arlene F. Bell, Deputy City Solicitor, for appellants, City of Philadelphia, et al.

Benjamin Paul, with him, Joseph R. Podraza, Jr., Abrahams, Loewenstein, Bushman & Kauffman, Philadelphia, for appellee, Frank L. Rizzo.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

SMITH, Judge.

Kevin M. Tucker, former Police Commissioner of the City of Philadelphia (Tucker) and the City of Philadelphia (City) appeal from the July 26, 1989 Order of the Court of Common Pleas of Philadelphia County which made final its Decree Nisi entered on June 15, 1989 permanently enjoining the City, its Finance Director and Board of Pensions and Retirement (Pension Board) from making further pension payments to Tucker out of the City's Police Pension Plan.

The issues presented on appeal are whether Tucker served as a uniformed or investigatory police employee which qualified him for pension under the Police Pension Plan; whether the Pension Board properly exercised its discretion in determining that Tucker was eligible for pension under the Police Pension Plan; whether Frank L. Rizzo, former Mayor and Police Commissioner of the City of Philadelphia (Rizzo), failed to exhaust his administrative remedies; and whether Rizzo has standing to file a challenge to Tucker's pension. This Court will not disturb the final decree of the trial court unless it is unsupported by the

evidence or is demonstrably capricious. *See Lower Frederick Township v. Clemmer,* 518 Pa. 313, 543 A.2d 502 (1988); *Delp v. Borough of Harrisville,* 25 Pa.Commonwealth Ct. 486, 360 A.2d 758 (1976).

I

Rizzo filed his suit in equity and petition for preliminary injunction in the Court of Common Pleas of Philadelphia County on behalf of the taxpayers of the City seeking to enjoin the payment of pension benefits to Tucker pursuant to the Police Pension Plan, alternately referred to as Pension Plan D. Rizzo contends that the pension granted to Tucker by the Pension Board violates the Philadelphia Retirement System Ordinance of 1956, *as amended* (Ordinance) and the Philadelphia City Charter, 351 Pa.Code §§ 1.1–100—12.12–503, in that Tucker was improperly determined to be a police employee and thereby entitled to a pension restricted to that class of municipal employees. Under the Ordinance, art. I, § 101, the pensions of City employees are divided into the Municipal Division, Police Division and Fire Division.

Tucker was appointed on December 23, 1985 effective January 1, 1986 as Police Commissioner of the City. From December 23, 1985 to December 31, 1985, Tucker served as Deputy Managing Director of the City, performing functions related to the Police Department, and during this interim period, was placed in the Municipal Retirement Plan, alternately referred to as Pension Plan J. Tucker was subsequently transferred to the Police Pension Plan by the Executive Director of the Pension Board which was confirmed by memorandum dated January 17, 1986. This action formed the basis for Rizzo's suit.

Tucker served as Police Commissioner of Philadelphia from January 1, 1986 until his early retirement in June 1988, effective September 13, 1988, at the age of 48. As a result of the early retirement incentive offered to its employees by the City, Tucker became entitled to an additional year of service, thereby making him eligible for an annual

pension of $7,915.63 for the remainder of his life based upon service for pension purposes of three years, eight months and twenty-one days. Tucker contributed a total sum of $7,298.22 to the retirement system during his term as Police Commissioner. Rizzo maintained that had Tucker properly remained in Plan J, he would not have been eligible to retire until age 55 with at least ten years of service and moreover would not have received the enhanced pension benefits provided for under Plan D.

## II

■ The issue of standing must be addressed at the outset. The trial court found that Rizzo, as a pensioner in the City's retirement system, has a "substantial and immediate interest beyond that of the common taxpayer" in this case and would be adversely affected by an improper decision of the Pension Board and thus has standing. Indeed, it is the general rule that a party, in order to have standing, must have an interest in the action which is substantial, direct, and immediate to that party. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). The common interests shared by citizens and taxpayers in the administration of justice and proper resolution of disputes will in the usual case be insufficient to give a party standing in a controversey. *Id.* While this Court agrees with the trial court that Rizzo has standing, it is for reasons other than those articulated by the trial court.

■ The Pennsylvania Supreme Court has determined in *Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979) and more recently in *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988), that special cases will grant a taxpayer standing even when his or her interest may not be substantial, direct, and immediate. Such cases arise when governmental action will go unchallenged unless the taxpayer has the ability to intervene by judicial process. *Biester; Sprague.* In particular, these cases will most often occur where "those directly and immediately affected by the complained of conduct were beneficially affected as opposed

to adversely affected," thus making it improbable that a party will challenge the governmental action before the agency or on appeal. *Sprague*, 520 Pa. at 44, 550 A.2d at 187. A taxpayer may in the appropriate case therefore have standing to challenge the action pursuant to his or her common interest as a citizen to ensure the legality or propriety of the acts of government.

Taxpayer standing is not automatic in every such case. As the Supreme Court stated in *Sprague*, "consideration must be given to other factors [when determining whether a taxpayer should have standing in a controversy] such as, for example, appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim." 520 Pa. at 44, 550 A.2d at 187 (quoting *Biester*, 487 Pa. at 446, 409 A.2d at 852). The record does not present any factor that would indicate that Rizzo as a taxpayer should not have standing in this case.

Here, Tucker's application for retirement benefits was supported by the City and approved by the Pension Board. No party was aggrieved by the Pension Board's decision, and thus a challenge to its decision was not made by any original party. A challenge would therefore only arise by taxpayer intervention. Rizzo, as a taxpayer, instituted a challenge by bringing the present action in equity. Pursuant to *Biester* and *Sprague*, Rizzo has standing to do so. As discussed hereafter, Rizzo's standing as a taxpayer pursuant to the holdings of *Biester* and *Sprague* is an important factor in determining whether the provisions of Section 753(a) of the Local Agency Law, 2 Pa.C.S. § 753(a), apply to this case. Tucker and the City contend that Rizzo is barred from raising any challenge in this matter pursuant to Section 753(a) because Rizzo failed to exhaust administrative remedies.

■ Initially, it must be observed that there is a very important factual distinction between this case and the focus of Section 753(a) which prohibits a "party who proceeded before a local agency" from raising on appeal ques-

tions not raised before the agency. *See Lundy v. City of Williamsport*, 120 Pa.Commonwealth Ct. 520, 548 A.2d 1339 (1988), which holds that a party to a proceeding before a local agency may not institute an independent equity action under Section 753(b) when that party failed to file an appeal from a decision of the agency pursuant to Section 753(a). Rizzo, however, was not a party to the proceedings before the Pension Board. Neither Tucker nor the City is required or expected to notify the taxpayers or other pensioners concerning Tucker's or any other person's application for pension benefits, and the record does not indicate that any prior, contemporaneous, or even post notice was provided to Rizzo or any other taxpayer. Rizzo testified that he first became aware of Tucker's award of the Plan D pension from reading an after-the-fact account of it in a newspaper article.

Thus, Section 753(a) has no applicability to this case or in the usual case where a taxpayer raises a challenge to local governmental action under *Biester* and *Sprague*. A taxpayer rarely will receive prior notice of local governmental action of the kind at issue in this case, or even suspect that the governmental body will take action contrary to the public good. Therefore, the taxpayer cannot, at least in the usual case, be treated as if he or she were a party to the underlying administrative action, binding the taxpayer to participate in or timely appeal from administrative proceedings when he or she does not become cognizant of the case until after the administrative proceedings have concluded. Otherwise, the standing of taxpayers to challenge governmental action recognized in *Biester* and *Sprague*, and the important policy concerns underlying such standing, would be completely undermined.[1]

1. The record does not indicate, for example, if Rizzo learned of the action of the Pension Board within thirty days of such action allowing for a timely appeal to the common pleas court. In contrast, if a party has a direct, substantial, and immediate interest in a controversy, he or she will more likely receive prior, personal notice of the proceedings by service or otherwise.

A taxpayer, therefore, may institute equity proceedings to review or challenge local agency action pursuant to Section 753(b) of the Local Agency Law. This section provides that:

> The remedy at law provided by subsection (a) shall not in any manner impair the right to equitable relief heretofore existing, and such right to equitable relief is hereby continued, notwithstanding the provisions of subsection (a).

A taxpayer having standing under *Biester* and *Sprague* to challenge governmental action enjoys the right to equitable relief as a taxpayer. *See, e.g., Bruhin v. Commonwealth,* 14 Pa.Commonwealth Ct. 300, 305, 320 A.2d 907, 910 (1974) ("equity will intervene to restrain acts of officials which are contrary to positive law or amount to bad faith or constitute a violation of public duty"). Thus, Rizzo's equity action is not barred by Section 753(a); rather, it falls squarely under Section 753(b).

## III

■ Having established that Rizzo has standing to bring this action and that it is not barred by the Local Agency Law, the substantive issues raised by this appeal must now be addressed: whether Tucker is entitled to Plan D pension benefits. The trial court's resolution of this issue is eminently reasonable, logical, and persuasive and is also supported by the evidence. As the trial court found, neither the City Charter nor the Ordinance directly address the issue of whether the Police Commissioner is a civilian head of the Police Department or a member of the police forces he heads. Section 7–301 of the City Charter, 351 Pa.Code § 7.7–301, states however:

> All officers and employees of the City, including all officers and employees of all departments, all independent boards and commissions and all departmental boards and commissions, shall be under civil service except:
>
> . . . .
>
> (b) The Managing Director, the Director of Finance and the Personnel Director and their deputies, the *heads of*

*departments* and their deputies, and members of boards and commissions ... [emphasis added].

It is clear, therefore, that the Police Commissioner as a department head is not in the City's civil service. This fact is dispositive of this issue because, as the trial court found, civil service employment "is required of any member of the Philadelphia investigatory and uniformed police force." Trial Court Adjudication, p. 17. Only those employees defined as police officers who are governed by the civil service provisions of the City Charter, 351 Pa.Code §§ 7.7-100—7.7-401, are entitled to coverage in the Police Pension Plan.

In finding that Tucker was not a police officer, the trial court stated that "[h]e took no competitive examination for his position, written or oral. He had no right to a hearing before dismissal from his position and served at the pleasure of the appointing authority." Trial Court Adjudication, p. 17. Further, because Tucker is not a member of the City's civil service, and never has been, he is, unlike any police officer, eligible for social security benefits and did in fact contribute to the Social Security System. Moreover, the trial court acknowledged, although not binding on the court, that the August 29, 1988 opinion of the Inspector General of Philadelphia and the March 21, 1974 opinion of the Pennsylvania Attorney General determined respectively that Tucker was not a sworn member of the police force and was entitled to be in the Social Security System. Police Officers are restricted to their pension contributions for retirement purposes.

Upon hire, Tucker acknowledged that his position was non-civil service and that he became a member of the Municipal Pension Plan J. Moreover, art. II, § 106.3 of the Ordinance provides:

If any member of the Municipal Retirement System is appointed commissioner or deputy commissioner of the Fire Department or Police Department, he shall retain his membership in that division of the municipal retirement system covering his prior employment.

While the trial court de-emphasized the applicability of this Ordinance section to Tucker's situation (he served for one week in the Managing Director's Office prior to assuming duties as Police Commissioner), Section 106.3 further serves to illustrate the separate and special nature of the Police Commissioner's position as compared to the police force which the Police Commissioner manages.

The parameters for determining whether an agency has committed an abuse of discretion in its decision-making are well established:

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record, discretion is abused.

*Wingert v. Workmen's Compensation Appeal Board (Getty Refining)*, 78 Pa.Commonwealth Ct. 640, 643, 468 A.2d 526, 528 (1983). Thus, the record demonstrates that the Pension Board abused its discretion in determining Tucker eligible for benefits under Police Pension Plan D as no logical basis existed for the Pension Board's interpretation. Hence, the Pension Board's apparent overlooking or misapplication of relevant law renders its decision-making an abuse of discretion. *See also Leader Nursing Home v. Department of Public Welfare*, 82 Pa.Commonwealth Ct. 53, 475 A.2d 859 (1984), which reiterates the view that courts will not accord deference to an agency's interpretation of its regulations where it is nonsensical or contrary to relevant administrative and decisional precedent.

Based upon the foregoing, this Court must accordingly affirm the order of the Court of Common Pleas making final its Decree Nisi.

## ORDER

AND NOW, this 7th day of September, 1990, the July 26, 1989 Order of the Court of Common Pleas of Philadelphia County is affirmed.

CRUMLISH, Jr., President Judge, concurring.

I concur with the majority's result but must disagree with its analysis of the pertinent provisions of the statute at issue.

The majority rightly recognizes, as did the trial court, that the City's civil service regulations never applied to appellant Tucker as the civilian head of the Police Department. However, no reference or mention of the City's civil service regulations is contained in the Retirement Service Ordinance. Pension eligibility and classification is thus not governed by the civil service. Hence, the necessary focus of our analysis should be the Ordinance itself.

As the majority notes, City pensions under the Ordinance are divided into the Municipal Division and the Police and Fire Division. In turn, Section 201.1(d) of the Ordinance defines police employee as "[a]ny full time uniformed or investigatory employee of the Police Department, the District Attorney's office or Fairmount Park Commission of the City...." Although it is clear that appellant Tucker is not a *uniformed* Department employee, the term "employee" is defined at Section 201.1(a) as "[a]ny elected or appointed officer or employee who is paid out of the Treasury of the City...." Thus, it would at first blush appear that there is merit to the argument that Tucker is a Plan D-eligible employee as that term is defined in the Ordinance—that is, any appointed investigatory officer paid out of the City treasury.

However, if the term includes Tucker, then it must also include the Executive Director of the Fairmount Park Commission and the Recreation Commissioner (an ex officio member of the Park Commission) whose duties include, *inter alia,* investigatory functions.

So while the language of the ordinance may seem sufficiently broad to include Tucker, it follows that it must also include these other employees, whose duties fall under the general "investigatory" rubric—a result that is not only inequitable but also absurd.

Upon examining the Ordinance in full context, it should be clear that the Plan–D pension was created for the benefit of uniformed policeman, police detectives and special units of the Department. Common sense dictates that the adjective "investigatory" is inserted in the definition to insure that police and district attorney's office personnel—for example, plainclothes officers, detectives, undercover units—who may not be uniformed but who nonetheless perform the same functions as their uniformed colleagues, are included in and benefit from the same pension plan.

The reason the City Charter, 351 Pa.Code § 6.6–600, and the Ordinance expressly provide for a separate pension fund for these men and women (as well as for firefighters) should be manifest. Not only are these employees members of privately organized associations which provide them with certain pension and retirement benefits, *see* Notes to 351 Pa.Code § 6.6–600, they also expose themselves daily to great risk. (Notwithstanding that a Commissioner may attempt to appear to *assume* an investigatory role by tucking a nightstick into his tuxedo before an orchestrated media display make an appearance at a disaster or melee, police officers are committed by the nature of their jobs to undergo grave risks daily while investigating possible criminal activity.) Having ascertained the intent of the Ordinance by considering the circumstances under which it was enacted and the object to be attained, 1 Pa. C.S. § 1921(c)(2) and (4), we can *then* look to other factors which support our interpretation.

The City's civil service regulations govern police officers and investigatory personnel; they do not apply to the Police Commissioner or other department heads, 351 Pa.Code § 7.7–301(b). The Commissioner is an at-will appointee of the Mayor and has no property or statutory right to his job or its emoluments. Tucker, originally serving (however briefly) in the Managing Director's office, was placed at the inception of his tenure in Plan J by the Pension Board's Executive Director.

While no one of these facts is dispositive in and of itself, the distinctions lend credence to the conclusion that the Ordinance's Plan–D pension provisions were never intended to apply to a civilian Police Commissioner who had not served in the department in any capacity other than administrative or executive.

Tucker's removal from Plan J to Plan D, in contravention of Article II, Section 106.3 of the Ordinance, is an apparent attempt to justify additional compensation through a circuitous route taken at taxpayers' expense. In an era of severe municipal fiscal retrenchment, this type of maneuver to "end run" the system for personal gain is particularly unconscionable.

I differ also with the majority's analysis on the question of Rizzo's invocation of the court's equity jurisdiction. Again, the Ordinance itself provides a basis for standing without resort to the principles articulated in the *Biester* and *Sprague* precedents.

Section 112.1 of the Ordinance allows "[a]ny member or beneficiary ... the right to appeal any decision or determination of the Fund of the Association to the Board." Thus, we need look no further than the Ordinance to find Rizzo's standing. As a party with the right to appeal, he is entitled to notice of the Board's determination. 2 Pa.C.S. § 553. Consequently, if Rizzo has shown that he was not given notice of a decision which he rightfully may seek to remedy by appeal, then his statutory remedy is inadequate.

Having said that, I hasten to add that courts should not allow equity to act unless the inadequacy of other remedies is first established. We must also preserve the "clean hands" maxim and not waste judicial resources in the name of equity on what, it cannot be gainsaid, appears in this case to be a personal mission. It is indeed a cynical view of government and of our judicial system—which Rizzo on the basis of his longstanding tenure in public office ought to condemn instead of espouse—that looks to the courts as the preferred venue to pursue political ambition or other self-gratifying causes. This conduct mocks the intention of the

Ordinance and perforce reduces the public respect for those whose lives are dedicated to the safety and welfare of the citizens of Philadelphia. Courts are not soundstages on which to create controversy for publicity purposes, a fact which herein I sense.

As is obvious in this discussion, it is with no small measure of distress that I must participate in a decision which would favor *either* side in this unprofessional dispute, when neither has demonstrated the good faith which the public trust, by virtue of their offices, had at least at one time required of them.

McGINLEY, Judge, dissenting.

I respectfully dissent. I join in Judge Pellegrini's dissent only to the extent that Rizzo lacked standing to bring the taxpayer's action in common pleas court. Accordingly, I would reverse.

PELLEGRINI, Judge, dissenting.

I dissent. There is no dispute that the Philadelphia Pension Plan, if Tucker qualifies, provides for a generous (some would say overly generous) pension as it has to over 100 others that were similarly situated. However, the wisdom of the providing of such pension benefits is not before us. The only issues before us are (1) whether Rizzo has standing to challenge Tucker's pension and in what form, and (2) whether Tucker is eligible for a pension under Plan D of the Retirement Ordinance.

## I.

The majority finds that Rizzo has standing as a taxpayer to maintain a suit in equity challenging the action of the Board of Pensions and Retirement (Pension Board). A taxpayer's standing is bottomed on the principle that tax funds are being improperly expended. Because Tucker is to be paid from assets under the control of the Pension Board, the majority is under the misapprehension that it

must be tax funds that are to be improperly spent if Tucker receives a police pension. Municipal pension funds have three sources of funding:[1] member contributions (in the case of police officers, 6% of their salary); state aid; and mandated contributions from the city (§ 895.301). These "contributions" are co-mingled into a trust fund where they are no longer under the control of the municipality, but under the control of the Pension Board, whose fiduciary obligation is not to the taxpayers but to the members and beneficiaries of the fund. Any tax funds given to a pension fund lose their identity as such once they became assets of the Pension Board. For this reason alone, a taxpayer would not have standing.

Act 205 is in accord with this proposition, as well as the inability of a taxpayer to bring an action to challenge the Pension Board's decision. The General Assembly made a specific legislative finding that the failure of a municipality to make its mandated contributions to a pension fund constitutes "a danger to the Commonwealth itself." 53 P.S. § 895.306(a). While giving standing to members and beneficiaries of a pension fund to force the municipality to make those contributions, it foreclosed taxpayers from also bringing an action to rectify that danger. Section 306 C & D of Act 205, 53 P.S. § 306(c), (d) provides that:

> (c) Persons beneficially interested.—Any person who is beneficially interested in the affairs of the municipal pension plan shall have standing to institute a legal proceeding for mandamus as provided for in this section. A beneficially interested person is any person who:
>
> (1) has the relationship with the municipal pension plan of:
>
> (i) an active member, whether or not any minimum service requirement for acquiring a vested right to a retirement benefit has been met;

1. *See generally* Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, P.L. 1005, 53 P.S. §§ 895.101–895.803 (Act 205).

(ii) an inactive member with a vested right to deferred receipt of a retirement benefit;

(iii) a retired member;

(iv) a recipient of retirement benefit other than a retired member;

(v) a former member with member contributions to the credit of the member with the municipal pension plan; or

(vi) a spouse, child or other potential beneficiary pursuant to the terms of the plan document or the municipal pension plan of any person described in subparagraphs (i) and (v);

(2) serves in the position of a fiduciary with respect to the municipal pension plan;

(3) represents active members of the municipal pension plan as collective bargaining agreement; or

(4) serves as an elected or appointed official of the municipality.

(d) Others with standing to bring action.—The Public Employee Retirement Study Commission shall have standing to institute a legal proceeding for mandamus as provided for in this section. The Attorney General, or the district attorney of the county in which the municipality is located, in addition to any other powers and duties conferred on that office by law, shall also proceed in the name of the Commonwealth, upon request of the commission or upon the person's own motion, to institute a legal proceeding for mandamus as provided for in this section.

The General Assembly, by excluding taxpayers from those persons beneficially interested in the affairs of a municipal pension plan, inferentially concluded that taxpayers have no standing to bring an action concerning distribution of such funds.

The Philadelphia Retirement System Ordinance (Retirement Ordinance) likewise recognizes that the Pension Board owes a fiduciary duty to its members to pay out pension funds only to those entitled to receive them. Section 121.1

of the Retirement Ordinance provides that any member or beneficiary can appeal "any decision or determination ... to the Board."

Section 112.1 does not limit participation in the Pension Board proceeding to the member whose pension is at issue as Rizzo suggests, but instead states that any member shall have the right to appeal any determination of the Fund or the Association to the Pension Board. Thus, Rizzo, as a member, was free to challenge the award of Tucker's pension before the Pension Board, and if necessary, appeal the Pension Board's determination to the common pleas court.[2]

Rizzo did not participate in the Pension Board proceeding or appeal the Pension Board's decision to the common pleas court. On January 18, 1989, three months after the Pension Board approved Tucker's pension, Rizzo filed this equity action in common pleas court. In *Lundy v. City of Williamsport*, 120 Pa.Commonwealth Ct. 520, 548 A.2d 1339 (1988), this Court noted:

> In *The Aquarian Church of Universal Science [Service] v. County of York*, 90 Pa.Commonwealth Ct. 290, 494 A.2d 891 (1985), we held that where the legislative provides a mandatory and exclusive statutory remedy, equity is without power to act in relief of a party who fails to pursue the remedy, Appellant's statutory remedy under Section 752 of the Local Agency Law, 2 Pa.C.S. § 752, and Section 933 of the Judicial Code, 42 Pa.C.S. § 933, is to appeal to the trial court. We have repeatedly held that failure to appeal a local governmental agency adjudication within thirty days from the date of the order complained of divests the trial court of jurisdiction. See *Appeal of Federated Dept. Stores, Inc.*, 78 Commonwealth Ct. 346, 467 A.2d 908 (1985) [1983]. Appellant makes no argument that this statutory remedy is inadequate and offers no excuse as to why he did not pursue it.

2. Neither the common pleas court nor Rizzo, in his response to Tucker's contention that Rizzo must first bring a challenge to Tucker's pension before the Pension Board, raises the issue of whether Rizzo received notice of the Pension Board's proceeding.

Instead, Appellant argues that 2 Pa.C.S. § 753(b) gives him an independent right to pursue a separate equity action in the same case four months after his statutory right of appeal has expired. 2 Pa.C.S. § 753(b) states:

(b) Equitable Relief.—The remedy at law provided in subsection (a) shall not in any manner impair the right to equitable relief *heretofore* existing, and such right to equitable relief is hereby continued, notwithstanding the provisions of subsection (a). (Emphasis added.)

In *Arsenal Coal Co. v. Department of Environmental Resources*, 505 Pa. 198, 477 A.2d 1333 (1984), our Supreme Court interpreted 2 Pa.C.S. § 703(b) governing appeals from Commonwealth agencies. 2 Pa.C.S. § 753(b) is patterned after this Section with respect to appeals from local governmental agencies and the language is identical. The Supreme Court noted that a petitioner could seek equitable relief at the same time he pursued an agency appeal or could request pre-enforcement review of administrative regulations within the original jurisdiction of this Court.

But a court's equity powers are limited by the existence of an adequate statutory remedy. *Arsenal Coal Co.*, 505 Pa. at 208, 477 A.2d at 1338. In local governmental agency appeals jurisdiction and remedy is conferred by statute. A court has no equity powers if it has no jurisdiction. 2 Pa.C.S. § 753(b) may permit Appellant to pursue equitable relief existing before his statutory remedies are exhausted. But there is nothing in this Section that permits Appellant to file an equity action after his statutory remedy to the same relief has expired because he failed to appeal a local governmental agency adjudication thus depriving the trial court of subject matter jurisdiction over the action. Appellant certainly could have raised an estoppel argument in an appeal from the LERTA appeal board. Equity will not act to save Appellant from the failure to statutorily protect his interest where the statutory remedy, namely, appeal from the administrative agency is adequate to prevent the harm.

*Chartiers Valley School District v. Virginia Mansions Apartments, Inc.*, 340 Pa.Superior Ct. 285, 489 A.2d 1381 (1985). The order of the trial court must be affirmed. *Lundy,* 120 Pa.Commonwealth Ct. at 523–534, 548 A.2d at 1340–1341.[3]

Assuming that Rizzo preserved the notice issue, it is central to both the majority and concurring opinions that the local agency law appeal process was unavailable and an action in equity could be maintained concerning the Board's action to award Tucker a pension. The concurring opinion would find that if Rizzo had received notice, then he would have had to exhaust his administrative remedies through a local agency appeal. The majority, more broadly, finds that because a taxpayer would never easily receive notice of a local agency action or it perceived that the agency would act contrary to the public's good, that the local agency process is unavailable and, hence, has a right to maintain an equity action.

The concurring opinion finds that if Rizzo had notice, he would have had to utilize the local agency law process of appeal of the Pension Board's decision, but since he did not, he did not have an adequate remedy at law, and accordingly, could maintain the action in equity. While this concurring opinion correctly finds that Rizzo had an adequate remedy, it was incorrect to hold that the remedy did not exist because he did not receive notice. If Rizzo was required to receive actual notice, once he receives such notice, the time period in which he is able to take the appropriate local agency appeal begins when he became aware of the Pension Board's action. *See Highland Park Community Club v. Zoning Board of Adjustment,* 509 Pa. 605, 615–616, 506 A.2d 887, 892–893 (1986). Rizzo then had a local agency appeal right which he failed to pursue timely. Because Rizzo, at the time he filed the equity action, had an

---

**3.** As pointed out in *Lundy,* the majority citation to Section 753(b) of the Local Agency Law, 2 Pa.C.S. § 753, is inappropriate because equity jurisdiction never "heretofore existed."

adequate administrative remedy which he failed to exhaust, his complaint must be dismissed.

The majority's rationale is both more expansive and more troublesome. Despite Sunshine Law notices, the majority would have the effect of allowing a taxpayer to file in equity a challenge to any action of any board that may render a ruling that bestows a favorable result on the party before it. If a taxpayer desired to challenge in equity an alleged improper refund by the Board of Finance and Review, he could do so because it would involve the return of tax money. Similarly, a taxpayer, if he did not have notice, would have standing to challenge that action of a Board of Property Assessment in equity merely by alleging that it was improper and against the public good. The administrative agency system, both local and state, cannot operate efficiently if we accord a taxpayer such expansive standing rights without a more distinct injury and allow them to be able to bypass local agency procedures simply by alleging that they were unaware that the board may have acted against the public's good.

For the reasons above, Rizzo's complaint should have been dismissed and, accordingly, the trial court reversed.

## II.

Whether he serves three years or thirty years, two reasons have been advanced as to why Tucker can never be eligible for coverage under Plan D. The majority finds that only those members who are covered by civil service are entitled to coverage by the Police Pension Fund. No requirement is contained in the Retirement Ordinance, as the concurring opinion correctly points out, that to be eligible for Plan D coverage, you must be covered by civil service.

Although finding that civil service coverage is not determinative, the concurring opinion goes to the nub of the issue in finding that the Police Commissioner is not eligible for Plan D coverage because he does not ordinarily perform police functions. By adopting this approach, the concurring

opinion ignores both the powers that a Police Commissioner has and misperceives the nature of police work.

While it is true that the Police Commissioner does not ordinarily perform the function of a street officer, he has all of a street officer's police powers (R. 319a) and more. He has a police badge as all police officers have (R. 319a); can give commands as to when police officers can shoot, search or arrest (R. 273a, 332a); can make arrests, execute searches and carry a gun without a license (R. 270a–275a, 319a–325a); can issue police directives (R. 270a–275a, 260a, 248a–251a); and can direct the detail of all police investigations (R. 83a, 259a, 273a, 331a). While he, like a number of uniformed police officers, does not ordinarily carry out those functions, he, like them, does have the power to carry out those functions.

The concurring opinion misperceives the nature of police work by failing to recognize that management of a police department is as integral to police work as making arrests. The policy of the Police Commissioner, planning, managing and staffing determines the quality and efficiency of police work or whether a crisis turns into a disaster.

Finally, we give great deference to the interpretation by an agency of its regulations. *Pennsylvania Industries for the Blind and Handicapped v. Department of General Services*, 116 Pa.Commonwealth Ct. 264, 541 A.2d 1164 (1988). In this case, the Board of Pensions and Retirement, its counsel and the City Solicitor have determined that the Police Commissioner is eligible for Plan D coverage.

Even if Rizzo had standing to maintain this action, I would find that Tucker was covered under Plan D of the Retirement Ordinance.

For the foregoing reasons, I would reverse the trial court.

DOYLE, J., joins in this dissenting opinion.